Lenore L. Albert, Esq. SBN 210876*
31872 Joshua Dr #22C
Trabuco Canyon, CA 92679
Telephone (424) 365-0741
Email: lenorealbert@msn.com

Leslie Westmoreland, Esq. SBN 195188
1606 East Griffith Way PO Box 5137
Fresno, CA 93755-5137
Phone: (559) 970-6053
Email: LeslieWW1@gmail.com

Attorneys for Defendants, PRITAM S. GREWAL,
MANJEET K. GREWAL, and DEV S. GREWAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE AVALOS, an individual,<br><br>        Plaintiff,<br>vs.<br><br>FELIPE GONZALEZ, an individual;<br>PRITAM S. GREWAL, an individual;<br>MANJEET K. GREWAL, an individual; DEV<br>S. GREWAL, an individual; and DOES 1-10,<br>inclusive,<br><br>        Defendants. | CASE NO. 1:20-cv-01578-NONE-BAM<br><br><br>**MEMORANDUM OF POINTS AND<br>AUTHORITIES IN SUPPORT OF LENORE<br>ALBERT'S RESPONSE TO THE COURT'S<br>ORDER TO SHOW CAUSE DATED 3/05/2021**<br><br>Hearing Date: April 9, 2021<br>Time: 9:00AM<br>Ctrm: 8 (BAM) |

i

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

**TABLE OF CONTENTS**

I.   Facts ............................................................................................1

   A.  Suspension Facts  .................................................................1

   B.  Background Facts .................................................................3

II.  Law .............................................................................................10

III. Legal Argument ........................................................................12

   A.  Reciprocal Suspension was not ordered in Other Cases in this
      Federal Court ........................................................................12

   B.  Good Character ...................................................................14

   C.  Constitutionality under the First and Fourteenth Amendment
      of the U.S. Constitution ......................................................18

      i.The $37,555.00 Disciplinary Cost Bill is an Excessive
         Fine or Penalty ...........................................................18

      ii.Ms. Albert Is not Being Treated Equally Under the Law ..............21

   D.  The 30-Day Suspension Order (2018) ................................23

      i.Some Charges Were Dismissed After Trial.................................23

      ii.The Sisson Emails.................................................................24

      iii.The Civil Discovery Sanctions $5,738.00 ...............................27

   E.  The 6-Month Suspension Order (2019) ..............................31

      i.Nira Woods $20,000 Fee Dispute ................................................32

      ii.Lucas/Fin City Civil Discovery Sanctions $47.00........................37

   F.  The Selling Factors ...........................................................39

      i.Due Process .......................................................................39

      ii.Insufficient Evidence .........................................................40

      iii.Grave Injustice .................................................................42

IV. Conclusion .................................................................................45

ii

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

V.  Notice of Related Cases ..................................................................46

VI. Proof of Service        ..................................................................47

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Albert v Satellite Mgmt. Co.*, 2005 Cal. App. Unpub. LEXIS 9188, 2005 WL 2476292 (2005). ......... 16

*Albert v. State Bar*, 2020 U.S. LEXIS 4, 140 S. Ct. 820, 205 L. Ed. 2d 498, 2020 WL 129917 (Jan 13, 2020). ...................................................................................................................... 46

*Albert-Sheridan v. State Bar of Cal.* (*In re Albert-Sheridan*), 960 F.3d 1188 (9th Cir. 2020). .............. 16

*Albert-Sheridan v. State Bar of Cal.* (In re Albert-Sheridan), 960 F.3d 1188, 1194 (9th Cir. 2020). .... 32

*Albert-Sheridan v. State Bar of Cal.* (In re Albert-Sheridan), 960 F.3d 1188, 2020 U.S. App. LEXIS 18348, Bankr. L. Rep. (CCH) P83,534, 68 Bankr. Ct. Dec. 217, 2020 WL 3086631 (June 10, 2020) ............................................................................................................... 19, 46

*Albert-Sheridan v. State Bar,* 2021 U.S. LEXIS 126, 208 L. Ed. 2d 542, __ S.Ct. __, 2021 WL 78294 (Jan 11, 2021)........................................................................................................ 46

*Berlinghieri v. Department of Motor Vehicles* 33 Cal 3d 394 (1983) ................................................ 19

*Brown v. Smith (In re Poole),* 222 F.3d 618, 620-621 (9th Cir. 2000), .................................................. 12

*California Teachers Assn. v. State of California* 20 Cal.4th 327 (1999). ............................... 3, 14, 18, 44

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991) ....................... 11

*Conservatorship of Wendland* 26 Cal.4th 519, 552 (2001) ............................................................... 12

*Conway v. State Bar* 47 Cal.3d 1107 (1989) .................................................................................. 18

*Endler* v. *Schutzbank* 68 Cal.2d 162 (1968) ................................................................................. 18

*Ex parte Burr*, 22 U.S. 529, 529, 1824 U.S. LEXIS 388, *1, 6 L. Ed. 152, 9 Wheat. 529 (1824)........ 10

*Ex Parte Tillinghast*, 29 U.S. 4 Pet. 108, 109 (1830) ...................................................... 11, 15, 17, 41

*Durst v. United States*, 434 U.S. 542, 553-554, 98 S. Ct. 849, 855, 55 L. Ed. 2d 14, 23 (1978) ......... 20

*Galope v. Deutsche Bank Nat'l Trust Co.,* 566 Fed. Appx. 552, 2014 U.S. App. LEXIS 5686 (9th Cir. 2014). ......................................................................................................................... 16

*Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1032, 111 S. Ct. 2720, 2723, 115 L. Ed. 2d 888, 897, (1991)........................................................................................................................ 27

*In re Borowski* 216 BR 922, 925 (Bankr ED Mich 1998) ................................................................ 14

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

*In re Kramer*, 193 F.3d 1131, 1132 (9th Cir. 1999) ................................................................ 12

*In re Kramer*, 282 F.3d 721, 723 (9th Cir. 2002). .................................................... 10, 12, 13

*In re Preszler*, 169 Wn.2d 1, 232 P.3d 1118, 1128 (Wash. 2010) ...................................... 41

*In re Primus*, 436 U.S. 412, 433-434, 98 S. Ct. 1893, 1905-1906, 56 L. Ed. 2d 417, 435-436 (1978). 17

*In re Ruffalo*, 390 U.S. 544, 551-552, 88 S. Ct. 1222, 1226, 20 L. Ed. 2d 117, 122-123 (1968)... 22, 24, 39, 40

*In re Scannell*, 2011 U.S. App. LEXIS 26705, *1 (9th Cir. 2011). ............................ 41, 42, 43

*In re Woodruff*, 2018 U.S. Dist. LEXIS 59245, *1-2 (9th Cir. 2018). .................................. 13

*In the Matter of Hundin* (Review Dept. 1997) 3 Cal State Bar Ct. Rptr. 657. .................... 36

*In the Matter of Respondent X* 3 Cal. State Bar Ct. Rptr. 592, 604 (Rev; Dept. 1997). ........ 30

*Konigsberg v. State Bar of Cal.,* 353 U.S. 252, 261-262, 77 S. Ct. 722, 727-728, 1 L. Ed. 2d 810, 819 (1957)..................................................................................................................... 26

*Lueras v. BAC Home Loans Servicing, LP,* 221 Cal. App. 4th 49, 163 Cal. Rptr. 3d 804 (2013) ........ 16

*Mackay v. Nesbett*, 412 F.2d 846 (9th Cir. 1969) .............................................................. 43

*Mackovska v. Bank of Am., N.A.,* 2017 Cal. App. Unpub. LEXIS 5668, 2017 WL 3484520; ............. 16

*Mackovska v. Viewcrest Road Properties LLC*, 40 Cal. App. 5th 1 (2019) .......................... 16

*Mackovski v. City of Garden Grove*, 666 Fed. Appx. 649, 2016 U.S. App. LEXIS 21243, 2016 WL 6936643 (9th Cir. 2016)........................................................................................ 16

*Majd v. Bank of America, N.A.*, 243 Cal. App. 4th 1293 (2015) ...................................... 16

*Maltaman v. State Bar* 43 Cal.3d 924, 951-952 (1987)............................................... 29, 30

*People v. Gonzalez*, 12 Cal.4th 804 at p. 818-819 (1996) .............................................. 30

*Perlmutter v Cordova West Props.*, 2006 Cal. App. Unpub. LEXIS 11454, 2006 WL 3742664 (2006). .................................................................................................................................... 16

*Price v State Bar* (1982) 30 Cal 3d 536, 547............................................................... 36

*Schaffer v. Louisiana State Bd. of Dentistry (In re Schaffer),* 515 F.3d 424 (5th Cir.2008) ............... 14

*Scheer v State Bar* (In re Scheer) 819 F3d 1206 (9th Cir 2016)...................................... 32

*Schware v. Board of Bar Exam. of N.M.*, 353 U.S. 232, 238, 1 L. Ed. 2d 796, 77 S. Ct. 752 (1957)... 11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

*Selling v. Radford*, 243 U.S. 46, 50, 37 S. Ct. 377, 378, 61 L. Ed. 585, 587 (1917).... 10, 11, 24, 27, 31, 32, 36, 39, 40, 41, 42

*State Bar of Cal. v. Findley* (In re Findley), 593 F.3d 1048, 1050 (9th Cir. 2010) ............................. 19

*State Bar v. Albert-Sheridan, 2021* U.S. LEXIS 76, 208 L. Ed. 2d 563, __ S.Ct. __, 2021 WL 78485 (Jan. 11, 2021)............................................................................................................................. 46

*Talaie v. Wells Fargo Bank, NA*, 808 F.3d 410, 2015 U.S. App. LEXIS 21557 (9th Cir. 2015)........... 16

*Tate v. Short,* 401 U.S. 395, 28 L. Ed. 2d 130, 91 S. Ct. 668 (1971) ...................................................... 22

*Theard v United States*, 354 U.S. 278, 281, 77 S. Ct. 1274, 1276, 1 L. Ed. 2d 1342, 1344 (1957). . 9, 11

*Timbs v. Indiana*, 139 S. Ct. 682, 203 L. Ed. 2d 11 (2019). ............................................... 18, 19, 20, 21

*Tumey v. Ohio*, 273 U.S. 510, 523, 47 S. Ct. 437, 441, 71 L. Ed. 749, 754 (1927). ............................. 44

*United States v. Dubose*, 146 F.3d 1141, 1143-1144 (9th Cir. 1998)...................................................... 21

*Williams v. Ill.*, 399 U.S. 235, 236, 90 S. Ct. 2018, 2020, 26 L. Ed. 2d 586, 590 (1970) .................... 22

*Womack v. Lovell*, 237 Cal. App. 4th 772 (2015)................................................................................... 16

*Yau v. Deutsche Bank Nat'l Trust Co. Ams*., 2013 U.S. Dist. LEXIS 116854, 2013 WL 4083014 (CD CA 2013).............................................................................................................................................. 16

*Zuckerman v. State Bd. of Chiropractic Examiners*, 29 Cal. 4th 32, 44 (2002). ................................... 44

**Statutes**

11 USC. § 523(a)(7)................................................................................................................................. 19

Cal. Bus & Prof Code § 6068(i).............................................................................................................. 25

Cal. Bus & Prof Code § 6068(o)............................................................................................................. 28

Cal. Bus & Prof Code § 6086.10 ...................................................... 1, 2, 3, 7, 18, 20, 21, 43, 44

Cal. Bus & Prof Code § 6140.7 ............................................................................................................... 2

Cal. Bus & Prof Code § 6103 ................................................................................................................ 28

Cal. Bus. & Prof. Code § 6140.7 ....................................................................................................... 1, 18

Code Civ. Proc., § 128.5.................................................................................................................. passim

Code Civ. Proc., § 128.7.................................................................................................................. passim

Code Civ. Proc., § 1005................................................................................................................... passim

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

Code Civ. Proc., § 2023.040 ................................................................................... passim

Code Civ. Proc., § 904.1, subd. (b).......................................................................... 28

**Rules**

Cal Prof Rule Cond., Rule 1-311 ............................................................................... 17

Cal Prof Rule Cond., Rule 4-100(B)(3) ..................................................................... 34


**Constitutional Provisions**

I Amend. U.S. Const. ............................................................................................... passim

XIV Amend. U.S. Const. .............................................................................. 18. 19, 22, 44

VIII Amend. U.S. Const. ......................................................................................... passim

Cal. Const., art. I, § 7 ................................................................................................. 18

Other Authorities

http://www.statebarcourt.ca.gov/Portals/2/documents/2021-Discipline-Costs.pdf................................ 3

http://www.statebarcourt.ca.gov/Portals/2/documents/2020-Discipline-Costs.pdf................................ 3

http://www.statebarcourt.ca.gov/Portals/2/documents/2019-Discipline-Costs.pdf................................ 3

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

# MEMORANDUM OF POINTS & AUTHORITIES

## I.   FACTS

### A.  Suspension Facts

The California State Bar has approximately 270,000 living members with 190,000 members still actively practicing law. Membership is mandatory in order to practice in the state of California.

Ms. Albert received a 30-day suspension by way of a Supreme Court order issued on December 13, 2017. [Ex 30 2:101-102] She also received a 6-month suspension order by way of the California Supreme Court issued on July 11, 2019. [Ex 45 2:184]. Ms. Albert was already a member in good standing with the U.S. District Court of the Eastern District of California at that time. [Ex 58 2:276].

The California State Bar (the "Bar") has not flipped the magical switch to "active status" on Ms. Albert's State Bar membership page because Ms. Albert owes that State Bar $37,555.00 in mandatory State Bar disciplinary hearing and investigation costs. [Ex 60 2:218].

In its disciplinary proceedings, the Bar has two costs statutes. One is mandatory and the other is discretionary. The mandatory cost provision is laid out in Cal. Bus. & Prof. Code § 6086.10." The California State Bar has another statute, Cal. Bus. & Prof. Code § 6140.7 which conditions a lawyer's reinstatement of her status back to active upon payment of the §6086.10 costs.

California State Bar mandatory disciplinary costs under Cal. Bus. & Prof. Code § 6086.10 are used to defray the cost of conducting State Bar disciplinary hearings.  Cal. Bus. & Prof. Code § 6086.10(b)(3)

California Business & Professions Code §6086.10 provides:

**(a)** Any order imposing a public reproval on a licensee of the State Bar shall include a direction that the licensee shall pay costs. In any order imposing discipline, or accepting a resignation with a disciplinary matter pending, **the Supreme Court shall include a direction that the licensee shall pay costs**. An order imposing costs pursuant to this subdivision is enforceable both as provided in Section 6140.7 and as a money judgment. The State Bar may collect these costs through any means provided by law.

**(b)** The costs required to be imposed pursuant to this section include all of the following:

   **(1)** The actual expense incurred by the State Bar for the original and copies of any reporter's transcript of the State Bar proceedings, and any fee paid for the services of the reporter.

1

**(2)** All expenses paid by the State Bar which would qualify as taxable costs recoverable in civil proceedings.

**(3)** The charges determined by the State Bar to be "reasonable costs" of investigation, **hearing, and review**. These amounts shall serve to defray the costs, other than fees for the services of attorneys or experts, of the State Bar in the preparation or hearing of disciplinary proceedings, and costs incurred in the administrative processing of the disciplinary proceeding and in the administration of the Client Security Fund.

**(c)** A licensee may be granted relief, in whole or in part, from an order assessing costs under this section, or may be granted an extension of time to pay these costs, in the discretion of the State Bar, upon grounds of hardship, special circumstances, or other good cause.

**(d)** If an attorney is exonerated of all charges following a formal hearing, the attorney is entitled to reimbursement from the State Bar in an amount determined by the State Bar to be the reasonable expenses, other than fees for attorneys or experts, of preparation for the hearing.

**(e)** In addition to other monetary sanctions as may be ordered by the Supreme Court pursuant to Section 6086.13, costs imposed pursuant to this section are penalties, payable to and for the benefit of the State Bar of California, a public corporation created pursuant to Article VI of the California Constitution, to promote rehabilitation and to protect the public. This subdivision is declaratory of existing law.

Cal Bus & Prof Code §6086.10.[bold added].

Cal Bus & Prof Code § 6140.7 further provides:

Costs assessed against a licensee publicly reproved or suspended, where suspension is stayed and the licensee is not actually suspended, shall be added to and become a part of the license fee of the licensee, for the next calendar year. Unless time for payment of discipline costs is extended pursuant to subdivision (c) of Section 6086.10, costs assessed against a licensee who resigns with disciplinary charges pending or by a licensee who is actually suspended or disbarred **shall be paid** as a condition of applying for reinstatement of his or her license to practice law or return to active license status.

Cal Bus & Prof Code § 6140.7. [bold added].
The §6086.10 "reasonable" costs are fixed annually. The costs increase as the stages of a disciplinary action advances. The State Bar publishes these annual costs online.

*See*, http://www.statebarcourt.ca.gov/Portals/2/documents/2021-Discipline-Costs.pdf

*See*, http://www.statebarcourt.ca.gov/Portals/2/documents/2020-Discipline-Costs.pdf

*See*, http://www.statebarcourt.ca.gov/Portals/2/documents/2019-Discipline-Costs.pdf

2

Respondent has been denied reinstatement of her license by the California State Bar due to failure to pay the mandatory §6086.10 State Bar costs totaling $37,555.00 ($18,714.00 in 2019 and $18,849.90 in 2020).[1]

If Ms. Albert were a California teacher, the failure to reinstate her license would be unconstitutional. In 1999, the California Supreme Court held a state agency could not require a licensed professional to pay part of a disciplinary hearing cost. It found such action violates the due process clause because a judge's salary should be paid by the legislature, not from the professionals that are sitting before them. *California Teachers Assn. v. State of California* 20 Cal.4th 327 (1999).

The possible due process violations wafting in the air provide this federal court sufficient evidence to stand its' ground. The fact that the California State Bar conditions reinstatement on a lawyer's payment of mandatory costs that are used to pay for their own disciplinary hearing contravenes the spirit of protecting the same constitutional right the California Supreme court found so precious to not violate in *California Teachers Assn. v. State of California* 20 Cal.4th 327 (1999).

### B.  Background Facts

Ms. Albert is a graduate of Univ of the Pacific, McGeorge School of Law. She was admitted to the California State Bar on or about December 5, 2000 and had her own solo practitioner law practice from that time forward while taking care of her disabled mother.  She volunteered in many professional groups such as CAALA, CAOC, FBA, OCBA, LACBA, and the ABA. She was on the amicus committee for NACA, participated in lobby day with the CAOC and assisted judging ABA student negotiation competitions. Currently, she assists co-administering an online lawyer networking

---

[1]On appeal, the Ninth Circuit partially found in Cross-Petitioner's favor; correctly holding the three civil discovery sanctions totaling $5,738.00 plus interest payable to 10675 S. Orange Park Blvd, LLC/attorney Phil Green, were dischargeable in petitioner's Chapter 7 bankruptcy case. But the Ninth Circuit affirmed dismissal of Respondent/Cross-Petitioner's violations of 11 U.S.C. § 105(a) and 11 U.S.C. § 525(a) on the ground that there could not be a violation because the State Bar costs were not dischargeable. [Ex 51 2:216-226].

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

social media group of over 1,000 attorneys and allows members to showcase their specialties on her online show called Simply Lenore. [Decl of Lenore Albert].

On or about December 17, 2014 Ms. Albert was admitted into the U.S. District Court for the Eastern District of California. [Ex 58, 2:276]. At that time, Ms. Albert had been a member in good standing with the California State Bar for the past 14 years.

One year later, on or about December 15, 2015, the State Bar filed a Notice of Disciplinary Charges ("NDC") charging Ms. Albert with violating a state court order for failing to pay civil discovery sanctions, amongst other things that were not proven.

In order to understand why the State Bar would take the time to act as a debt collector for opposing counsel on three civil discovery sanction orders that opposing counsel never tried to even enforce, this Court needs to look at what happened one year prior.

One year prior, on or about December 3, 2014, Lenore Albert sued the California State Bar in the U.S. District Court for the Central District of California alleging violation of her civil rights. [Ex 19, 2:1] She alleged her civil rights were violated after a former client, Cindy Brown, summoned the local police department to Ms. Albert's law office to carry out her client files on the pretense she was working on an official investigation into Ms. Albert's office with the State Bar.[2] [Ex 19, 2:37-40].

Ms. Albert's office was located on the 11th floor of a business building where 65 other offices were located. Shortly after this event, Ms. Albert started to receive taunts from opposing counsel how they heard her office was "raided" and the State Bar would soon be shutting her down. This scuttle made it to the judges hearing her client's cases. It was very harmful to her cases, the trust of her clients and publicly embarrassing.

Shortly thereafter, Ms. Albert discovered a cunning person named Anthony Troy Williams enlightened Rene Powers and Cindy Brown in the craft of recording fake deeds of trust as a "Trustee" and "Private Attorney General." Ms. Powers and Ms. Brown began working their craft down the street

---

[2] Feeling abandoned by Ms. Albert after she restricted her representation to individuals who were not harassing others, a group of people targeted Ms. Albert, including but not limited to Cindy Brown.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

out of a P.O. Box in Newport Beach, California for the "Common Law Offices of America" owned by Anthony Troy Williams, a self-proclaimed sovereign citizen as part of a home loan modification/foreclosure rescue scam. [Ex 21, 22, 23 2:48-67].

After Lenore Albert informed the State Bar of what she had learned, her photo appeared on the Common Law Office of America's website between a monkey and a snake with a warning that she crossed the wrong people. It also asked others to file State Bar complaints against Ms. Albert.[3] [Ex 23, 2:55-67].

On or about March 9, 2015, the California State Bar informed Ms. Albert they dropped their investigation in relation to Cindy Brown and her associates.[4] Ms. Albert decided not to move to amend her federal civil rights complaint in return and the case was dismissed.[5]

But the implied truce between the State Bar and Ms. Albert did not last. On December 16, 2015, the California State Bar filed its first Notice of Disciplinary Charges ("NDC") against Lenore Albert.

On or about December 9, 2017 Ms. Albert filed papers to run for the local District Attorney race. On or about December 13, 2017 the California Supreme Court ordered Ms. Albert suspended for 30 days. The order resulted in a 30-day actual suspension and $5,738.00 payment of civil discovery sanctions (attorney fees) to opposing counsel Phil Green (the 10675 S Orange Park Blvd LLC parties). [Ex 25, 2:69].

Ms. Albert also had to pay $18,714.00 in costs to the State Bar. [Ex 29 2:99].

By that time, the State Bar had filed two more NDCs demanding even more money.

---

[3] Cindy Brown was also a public speaker for Occupy Fights Foreclosures where a group solicited more State Bar Complaints against Ms. Albert as explained by Irma Escobar. [Ex. 14 1:23-25]

[4] Ms. Albert even found a posting to the NLA by Rene Powers about Cindy Brown's case that was a call to action to others in the NLA community. [Ex 24, 2:68]. Ms. Albert perceived it putting a local judge in possible danger and reported it to law enforcement.

[5] However, after the dust settled the State Bar continued to investigate Ms. Albert, even bringing up the old complaints, including but not limited to, Cindy Brown's complaint in 2019. [Ex 41, 2:174].

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

On February 20, 2018 Ms. Albert, making about $4,500.00 per month, petitioned for reorganization of her debts under Chapter 13 of the U.S. Bankruptcy Code. On March 5, 2018, she filed her schedules listing her debts related to any collections against her law office, including but not limited to the State Bar, Nira Woods, Devin Lucas, Esq. (aka Fin City Foods), Phil Green, Esq. (aka the 10675 S. Orange Park Blvd LLC). [Ex 31, 32 2:103-124] She also disclosed her current monthly income and expenses. [Ex 33, 34 2:125-130]

Ms. Albert filed an adversary proceeding against the State Bar on April 6, 2018 alleging her debts were dischargeable. [Ex 35 2:131-155].

On May 14, 2018, the State Bar amended their Notice of Disciplinary Charges ("NDC #2") publicly accusing her of moral turpitude. Counts the State Bar later dismissed. [Ex 37 2:158-163].

The U.S. Bankruptcy Court found Ms. Albert's law practice's current income was insufficient to confirm a feasible payment plan and converted Ms. Albert's bankruptcy to a Chapter 7. [Ex 33, 34 2:125-130]

Ms. Albert's license was suspended for thirty days.[6] After the 30-day suspension period ran, the State Bar refused to reinstate the license. The State Bar proclaimed Ms. Albert had to pay Phil Green, Esq. approximately $5,738.00 in discovery sanctions first as stated in the California Supreme Court order. [Ex 30 2:101].

The Bankruptcy Court dismissed Ms. Albert's adversary proceeding against the State Bar and Ms. Albert appealed. [Ex 51 2:216-226].

She also petitioned the U.S. Supreme Court on the California Supreme Court Order (NDC #1) giving her a 30-day suspension. On October 1, 2018, the U.S. Supreme Court did not give reciprocal

---

[6] Which 30-day period is still up for debate. At first it was back dated. Then it was for four months. The State Bar website kept changing dates and even had her suspended well beyond the initial 30 days up until the eve of election for D.A.

6

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

suspension to her bar membership, but it denied her petition for certiorari. [Ex 1 1:1; Ex 40 2:172-173].[7]

Meanwhile, the State Bar tried Ms. Albert on the charges in prosecution number 2 on September 19, 2018. On January 9, 2019, the State Bar recommended a 6-month suspension, $20,000.00 to a former client on a fee dispute and $47.00 to opposing counsel Devin Lucas aka Fin City Foods for discovery sanctions. [Ex 55 2:240]. Ms. Albert could not appeal to the Review Department this time because she could not afford the $2,100.00 cost do so. [Ex 42 2:177].

A month later, her debts were discharged in bankruptcy (February 26, 2019). [Ex 43 2:178.].

Nevertheless, on March 27, 2019 the State Bar issued a second Costs Bill assessing $18,841.90 in §6086.10 costs for defending NDC #2. [Ex 44 2:181.]

On July 10, 2019, the California Supreme Court ordered Ms. Albert suspended for six months with reinstatement conditioned upon paying former client Nira Woods $20,000.00 and Devin Lucas, Esq. aka Fin City Foods $47.00. [Ex 45 2:184.]

Ms. Albert petitioned the U.S. Supreme Court again asking them to review the California Supreme Court's decision in NDC #2. On January 13, 2020, the U.S. Supreme Court did not impose reciprocal suspension of her membership to the U.S. Supreme Court Bar but denied her petition for certiorari. [Ex 46 2:185-187.]

Two weeks later, the California State Bar filed two more NDCs charging Ms. Albert within probation violations on or about January 29, 2020. [Ex 47, 48 2:188-198.]

On June 4, 2020 Ms. Albert filed a second Adversary Complaint in bankruptcy against the State Bar for violating the automatic stay. [Ex 49 2:199-213.]

On June 8, 2020, the State Bar purported to file an "erratum" to their NDC as to failure to pay Woods. [Ex 50 2:214.]

---

[7] Ms. Albert has been a member in good standing with the U.S. Supreme Court since May 2007. [Ex 1 1:1].

7

On June 10, 2020 the Ninth Circuit Court of Appeal agreed with Ms. Albert that payment to third parties were dischargeable. [Ex 51 2:216-226]. By that time, she owed the State Bar the Costs bill which was $18,714.00 for the 30-day suspension plus an additional $18,841.90 on the 6-month suspension. [Ex 29, 44 2:99, 181]. The State Bar connects the disciplinary costs to the attorney Annual Fee bill. When an attorney does not pay their Annual Fee bill, they are ineligible to practice law. It is the State Bar's position that Ms. Albert had to pay the State Bar $37,555.00 in State Bar costs first. [Ex 60 2:278]

Of course, the State Bar has discretion to waive costs when the attorney cannot afford them, but Ms. Albert's motion to waive the costs while in bankruptcy were denied by the State Bar Court, Review Department and California Supreme Court. [Ex 36, 38 & 39 2: 156-157, 164-172].[8]

After the Ninth Circuit opinion was published, the State Bar amended their most recent NDC and both parties petitioned the U.S. Supreme Court for certiorari. But the U.S. Supreme Court, once again, decided not to take up the issues. [Ex 52, 54 2:227-231, 239-46].

A status conference post appeal will be held in the U.S. Bankruptcy Court on April 7, 2021.

During this time, the State of Florida, and the U.S. Attorney General's Office in Hawaii criminally charged and prosecuted Anthony Troy Williams. On October 20, 2020 Anthony Troy Williams was sentenced to 240 months in federal prison and ordered to pay restitution in excess of $200,000.00 for multiple counts of mail and wire fraud under the RICO statute.[9] [Ex 53 2:232].

The CLOA website soliciting State Bar complaints against Ms. Albert was taken down but, the State Bar continues to "investigate" claims against Lenore Albert where the party is requesting money from the State Bar fund which gives up to $100,000.00 per claimant that successfully results in the

---

[8] She currently has a second motion to waive those costs sitting in State Bar Court, again.

[9] The judgment was for soliciting money by wire and mail from homeowners facing foreclosure, not for targeting Ms. Albert.

8

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

suspension of an attorney.[10] At the time of these suspensions that State Bar had approximately $71,439,549.00 invested in Fannie Mae/Freddie Mac stock making consumer attorneys representing homeowners in foreclosure cases unpopular. [Ex 27 2:77-79].

Not all federal courts have followed the California State Bar in reciprocal suspension. The U.S. Supreme Court never ordered reciprocal suspension in Ms. Albert's case. She is an attorney in good standing and has been since 2007. [Ex 1:1].

The Ninth Circuit allowed Ms. Albert to finish representing Brooke Noble on appeal under the third prong of *Selling*. [Ex 56 2:265-269]. Additionally, Judge Ishi of the U.S. District Court for the Eastern District of California allowed Ms. Albert to represent the Estate of Kilgore in 2019 to move to vacate a judgement based on fraud. [Ex 57 2:270-275].

In fact, no judge of the U.S. District Court for the Eastern District of California has applied reciprocal suspension. What occurred in this case was Ms. Albert requested a Certificate of Good Standing from both the U.S. District Court for the Eastern District of California and the U.S. Supreme Court to add to her application to the Michigan State Bar. When someone at the Clerk's office in the Eastern District saw her request, they simply looked up the Bar number on the California State Bar website and changed the status to inactive. Ms. Albert reached out to see if Judge Ishi ordered this and it was confirmed that he did not. It was not by order of the Court. Thus, Ms. Albert gave notice to this Court as soon as possible. [Ex 58, 59 2:276-277].

Ms. Albert's conduct while practicing in the U.S. District Court for the Eastern District of California has been ethical. This is the third case Ms. Albert has been hired as an attorney in this District and she has never been sanctioned by this Court.

Attorneys may be admitted to the bar of a federal court by way of admission to the State Bar like Ms. Albert did in this court in 2014, but they do not leave out the same door as they entered. *Theard v United States*, 354 U.S. 278, 281, 77 S. Ct. 1274, 1276, 1 L. Ed. 2d 1342, 1344 (1957).

---

[10] The people are induced to apply to the California Client Security Fund for money as explained by Irma Escobar, so groups will target a single attorney for the money. [Ex 14 1:23-25].

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

For example, Ms. Albert was admitted to the United States Supreme Court bar on **May 21, 2007**. She informed the U.S. Supreme court of each suspension and petitioned the U.S. Supreme Court for cert. after the California Supreme Court's order was issued. Each time, the U.S. Supreme Court denied cert, but it stopped short of issuing a reciprocal suspension.

Ms. Albert has and continues to remain a member in Good Standing with the U.S. Supreme Court.[11] She respectfully submits that the Eastern District of California should follow the U.S. Supreme Court's lead and do the same.

## II. LAW

A federal court cannot automatically suspend or disbar a member of their court because a state bar suspended or disbarred that member.

> The profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise. The right to exercise it ought not to be lightly or capriciously taken from him. On the other hand, it is extremely desirable that the respectability of the bar should be maintained, and that its harmony with the bench should be preserved. For these objects, some controlling power, some discretion ought to reside in the court. This discretion ought to be exercised with great moderation and judgment; but it must be exercised; and no other tribunal can decide, in a case of removal from the bar, with the same means of information as the court itself. If there be a revising tribunal, which possesses controlling authority, that tribunal will always feel the delicacy of interposing its authority, and would do so only in a plain case.

> *Ex parte Burr*, 22 U.S. 529, 529, 1824 U.S. LEXIS 388, *1, 6 L. Ed. 152, 9 Wheat. 529.

An "order of disbarment is not binding upon [the Court] as the thing adjudged in a technical sense. *Selling v. Radford*, 243 U.S. 46, 50, 37 S. Ct. 377, 378, 61 L. Ed. 585, 587 (1917).

"A state court's disciplinary action is not conclusively binding on federal courts" either. *In re Kramer*, 282 F.3d 721, 723 (9th Cir. 2002).

---

[11] Facts to go with the *Selling* factors will be presented in detail in the analysis section under each *Selling* factor.

10

Justice Marshall opined, "this Court does not consider itself authorized to punish here for contempt which may have been committed in [another] court." *Ex Parte Tillinghast*, 29 U.S. 4 Pet. 108, 109 (1830).

The federal court does not impose reciprocal disbarment if "it is found that it ought not to be accepted or given effect to, has been to absolutely destroy the condition of fair private and professional character, without the possession of which there could be no possible right to continue to be a member of this Bar." *Selling v. Radford*, 243 U.S. 46, 50, 37 S. Ct. 377, 378, 61 L. Ed. 585, 587 (1917).

Fifty years later in *Theard v United States*, 354 U.S. 278 (1957), the U.S. Supreme Court affirmed this principle by opining,

> While a lawyer is admitted into a federal court by way of a state court, he is not automatically sent out of the federal court by the same route. The two judicial systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their officers, among whom, in the present context, lawyers are included.

*Theard v United States*, 354 U.S. 278, 281, 77 S. Ct. 1274, 1276, 1 L. Ed. 2d 1342, 1344 (1957). (An old prior conviction of forgery not enough to disbar member of the U.S. Supreme Court.).

The *Theard* Court found "automatic acceptance by a federal court of the state disbarment" to be a reversible error. *Theard v United States*, 354 U.S. 278, 282-283, 77 S. Ct. 1274, 1277, 1 L. Ed. 2d 1342, 1345 (1957).

The federal court must use its judicial discretion to independently determine if the attorney should be suspended or disbarred from the federal court membership. There are three factors, any one of which if found, that prevents a federal court from exercising its discretion in imposing reciprocal suspension or disbarment.

> In short, "a federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991) (citing *Ex parte Burr*, 22 U.S. 529, 9 Wheat. 529, 531, 6 L. Ed. 152 (1824)). The power of courts to disbar or otherwise discipline attorneys must be exercised consistent with the requirements of the Due Process Clause. *See Schware v. Board of Bar Exam. of N.M.*, 353 U.S. 232, 238, 1 L. Ed. 2d 796, 77 S. Ct. 752 (1957).

11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

This means that the attorney must be afforded fair notice of the charge and a meaningful opportunity to respond. *See Ruffalo*, 390 U.S. at 550. A federal court may impose discipline or disbarment based upon another court's disciplinary adjudication only if an independent examination of the other court's record shows:

(1) no deprivation of due process;
(2) sufficient proof of misconduct; and
(3) no grave injustice would result from the imposition of such discipline. [citation].

In such circumstances, a show cause hearing must be afforded.

*Brown v. Smith (In re Poole),* 222 F.3d 618, 620-621 (9th Cir. 2000), (citing, *In re Kramer*, 193 F.3d 1131, 1132 (9th Cir. 1999) (citing *Selling*, 243 U.S. at 50-51) (In *Brown*, a bankruptcy trustee could not withhold attorney fees from attorney not a member of State Bar of Arizona.).

In exercising its discretion, the federal court "may 'examine a state court disciplinary proceeding if the state court's order is offered as the basis for suspending or disbarring an attorney from practice before a federal court." *In re Kramer*, 282 F.3d 721, 723 (9th Cir. 2002).

The State Bar was required to prove each element by clear and convincing evidence. Clear and convincing evidence leaves no substantial doubt and is sufficiently strong to command the unhesitating assent of every reasonable mind. *Conservatorship of Wendland* (2001) 26 Cal.4th 519, 552.

"[A]t a minimum, the district court should issue an order to show cause [] …and, the district court should review the state court record." *In re Kramer*, 282 F.3d 721, 723 (9th Cir. 2002).

## III. LEGAL ARGUMENT

### A. Reciprocal Suspension Was Not Ordered in Other Cases in this Federal Court

"[A] court seeking to impose reciprocal discipline engages in a function far different from a court seeking to impose discipline in the first instance." *In re Kramer*, 282 F.3d 721, 725 (9th Cir. 2002).

"[A] federal court's imposition of reciprocal discipline on a member of its bar based on a state's disciplinary [*29] adjudication is proper unless an independent review of the record reveals: (1) a

12

deprivation of due process; (2) insufficient proof of misconduct; or (3) grave injustice which would result from imposition of such discipline." *In re Kramer*, 282 F.3d 721, 724 (9th Cir. 2002),

First, this Court would not be first court in this district to ignore the suspension.

In the case of *Noble v Wells Fargo*, the Ninth Circuit Court of Appeals allowed Ms. Albert to continue her representation after her client, Ms. Noble declared her desire for Ms. Albert continue representing her. Additionally, Judge Ishi also allowed Ms. Albert to represent the estate of Kilgore (aka Ms. Noble) in moving to vacate judgment based on fraud on the court. Judge Ishi did not impose reciprocal discipline. Kilgore v Wells Fargo was also sitting in the U.S. District Court for the Eastern District of California. [Ex56-58 2:272-283].

Second, the parties and counsel in this action all consent to having Ms. Albert represent the defendants in this case although they know Ms. Albert was suspended by the California Supreme Court. [Ex 17-18 1:47-48].

In the case of *in re Woodruff*, 2018 U.S. Dist. LEXIS 59245, *1-2 (9th Cir. 2018)., attorney Woodruff's client, Ramsay, submitted a letter to the federal court expressing his desire for attorney Woodruff to represent him in federal court although Woodruff's license was suspended by the State Bar. The federal court allowed him to continue such representation and gave the attorney the specific task of showing his "progress in attention to deadlines and other matters of competent representation in the *Ramsey* case." *In re Woodruff,* 2018 U.S. Dist. LEXIS 59245, *5-6 (9th Cir. 2018).

Like *Woodruff,* Ms. Albert's clients Pritam Grewal, Manjeet K. Grewal and Dev S. Grewal have submitted a letter to this Court declaring their desire for Ms. Albert to continue to represent them in this case. [Ex 17-18 1:47-48]. Also, like Woodruff there are due process concerns, notably the term of actual suspension has long passed and the only thing holding up Ms. Albert's license is the nonpayment of disciplinary costs that have the waft of violating due process. Those costs were mandated, the purpose of which was to pay for the investigation and disciplinary hearing against Ms. Albert. The financial incentive cannot be ignored. *California Teachers Assn. v. State of California* 20 Cal.4th 327 (1999).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

On each occasion that Ms. Albert has been requested and been given the opportunity to practice in federal court, she has done so without abusing the privilege. This factor should weigh heavily in favor of keeping her status active in this Court.

B. **Good Character**

Groucho Marx is credited with saying "I refuse to join any club that would have me as a member." Groucho Marx was a comedian, not a lawyer.

However, the State Bar has not reinstated Ms. Albert's law license because it is conditioned upon her payment of $37,555.00 in State Bar disciplinary costs.

Failing to pay State Bar disciplinary costs is not equated with being unethical or lacking good character. The disciplinary costs are not equated with even being a fine or penalty in the fourth, fifth or sixth circuits. *In re Stasson*, 472 B.B 748 (Bankr. E.D. Mich 2012)(Disciplinary costs of $4,477.56 were discharged in the U.S. Bankruptcy court sitting in Michigan); In *Love v. Scott* (*In re Love*), 442 B.R. 868, 871 (Bankr.M.D.Tenn.2011), the U.S. Bankruptcy Court sitting in the Sixth Circuit found that $24,693.66 for attorney disciplinary costs were discharged in bankruptcy); *In re Luftkin v Bd of Profl Responsibility*, 336 S.W. 3d 223 (Tenn 2011) ($8,723.88 in attorney disciplinary costs discharged); *Schaffer v. Louisiana State Bd. of Dentistry (In re Schaffer),* 515 F.3d 424 (5th Cir.2008) ($217,852.13 in disciplinary costs discharged).

Similar treatment is made of restitution orders. For example, the Sixth Circuit in *In re Borowski* 216 BR 922, 925 (Bankr ED Mich 1998),  found that when the State Bar conditioned reinstatement of Borowski's license upon repayment of a restitution order, Borowski was entitled to damages and injunctive relief in the bankruptcy court under 11 U.S.C. § 105(a) and 11 U.S.C. § 525(a).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Accordingly, just because the California State Bar equates their State Bar disciplinary costs as a fine or penalty, that does not mean such fines or penalties automatically characterize the lawyer as unfit, immoral, or unethical.

Ms. Albert cannot conceive a legitimate reason for this Court to use the payment of State Bar disciplinary costs as a reason to disenroll Ms. Albert as a member of this Court. *Ex Parte Tillinghast*, 29 U.S. 4 Pet. 108, 109 (1830)..

This Court has no investment in the State Bar fee issue. It makes this Court no richer; it says nothing about the attorney's good character; and suspending an attorney for failure to pay a large State Bar fee based on disciplinary costs does nothing to protect the public. This Court's own judgment of Ms. Albert's character is relevant under the second *Selling* factor. [See collected declarations on file.]

Ms. Albert is a graduate of Univ of the Pacific, McGeorge School of Law. She was admitted to the California State Bar on or about December 5, 2000 and had her own solo practitioner law practice from that time forward while taking care of her disabled mother.  She volunteered in many professional groups such as CAALA, CAOC, FBA, OCBA, LACBA, and the ABA. She was on the amicus committee for NACA, participated in lobby day with the CAOC and assisted judging ABA student negotiation competitions. Currently, she assists co-administering an online lawyer networking social media group of over 1,000 attorneys and allows members to showcase their specialties on her online show called Simply Lenore. [Declaration of Lenore Albert].

The U.S. Supreme Court preserved Ms. Albert's membership in good standing knowing all of the accusations that the California State Bar has charged her with and in so doing a reflection of her good character. [Ex 1 1:1].

The State Bar suspension recommendations and opinions maculated Ms. Albert's public image and reputation. In spite of this, her good character is represented in the letters and declarations she collected in the past. [Ex 1-16 1:1-40].

15

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

Her fitness to practice law has been scribed in various successes on her ability to win reversal on appeal, some of which were published. See, *Lueras v. BAC Home Loans Servicing, LP,* 221 Cal. App. 4th 49, 163 Cal. Rptr. 3d 804 (2013) (cited over 431 times); *Majd v. Bank of America, N.A.*, 243 Cal. App. 4th 1293 (2015) (cited 44 times); *Womack v. Lovell*, 237 Cal. App. 4th 772 (2015) (cited 80 times); *Mackovski v. City of Garden Grove*, 666 Fed. Appx. 649, 2016 U.S. App. LEXIS 21243, 2016 WL 6936643 (9th Cir. 2016); *Mackovska v. Bank of Am., N.A.,* 2017 Cal. App. Unpub. LEXIS 5668, 2017 WL 3484520 (2017); *Mackovska v. Viewcrest Road Properties LLC*, 40 Cal. App. 5th 1 (2019) (cited 2 times); *Talaie v. Wells Fargo Bank, NA*, 808 F.3d 410, 2015 U.S. App. LEXIS 21557 (9th Cir. 2015) (cited 9 times); and *Albert-Sheridan v. State Bar of Cal*. (*In re Albert-Sheridan*), 960 F.3d 1188 (9th Cir. 2020). (cited 7 times); *Perlmutter v Cordova West Props*., 2006 Cal. App. Unpub. LEXIS 11454, 2006 WL 3742664 (2006).; *Galope v. Deutsche Bank Nat'l Trust Co.,* 566 Fed. Appx. 552, 2014 U.S. App. LEXIS 5686, 2014-1 Trade Cas. (CCH) P78,721, 2014 WL 1244279 (9th Cir. 2014).; *Albert v Satellite Mgmt. Co*., 2005 Cal. App. Unpub. LEXIS 9188, 2005 WL 2476292 (2005). *Yau v. Deutsche Bank Nat'l Trust Co. Ams*., 2013 U.S. Dist. LEXIS 116854, 2013 WL 4083014 (CD CA 2013).

She came in top 10% in the nation on her MBE score when she passed the Bar in 2000.

She took and passed the MPRE with a scaled score of 88 in October 2018 as ordered by the State Bar. She attended the California State Bar Ethics School and passed their test with a score of 100% on March 9, 2021. This demonstrates Ms. Albert understands her ethical obligations to her clients at the court. [Ex 2-4 1:2-10, Declaration of Lenore Albert].

Other voices in the community have risen above the scuttlebutt as Ms. Albert's reputation came under fire. Such people include but are not limited to, Brian Liddicoat, Esq., an attorney from this district, Hon. Mary Elizabeth Bullock, ret. a retired judge, Theresa Marasco, a paralegal, Paula

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

Gilbert-Bonnaire, Gerald Senear, an innocence advocate, former clients, and the like. [Ex 1-16 1:1-40, see also collected declarations].

She has been working on several litigation matters for two attorneys under the California Rules of Professional Conduct, Rule 1-311, after the suspension with no complaints. Cal Prof Rule Cond., Rule 1-311 [Decl. of Maria Mejia. Decl of Leslie Westmoreland.]

There is no precedent Ms. Albert could find showing a federal court disbarred or suspended an attorney from practicing in federal court because that attorney did not pay disciplinary costs in a State Bar matter. This federal bar is not authorized to punish Ms. Albert for failure to pay $37,555.00 to another Bar. *Ex Parte Tillinghast*, 29 U.S. 4 Pet. 108, 109 (1830). In the past two centuries, this Court has never been given the authority to punish an attorney in this Court for an outstanding attorney fee due bill in a state court.

Continuing to keep Ms. Albert's status as ineligible, which was switched from good standing to inactive by a non-judicial officer, based on her inability to pay such an exorbitant State Bar fee bill has nothing to do with fitness to practice law or the character of Ms. Albert. It only has to do with her lack of wealth. As such, this Court should not enforce reciprocal suspension.

Alternatively, if it must, it should find that the thirty days and six months have already been served, ignore the continued suspension due to failure to pay State Bar disciplinary costs and put Ms. Albert back on active standing.[12][13]

---

[12] The State Bar Court and California Supreme Court have discretion to waive the State Bar court costs and although Ms. Albert has petitioned for such, neither Court has granted that request. In some instances, the State Bar Court has even laid out payment plans or deferred payment of costs, but not for Ms. Albert. "In sum, the Rules in their present form have a distinct potential for dampening the kind of "cooperative activity that would make advocacy of litigation meaningful," *Button, supra*, at 438, as well as for permitting discretionary enforcement against unpopular causes." *In re Primus*, 436 U.S. 412, 433-434, 98 S. Ct. 1893, 1905-1906, 56 L. Ed. 2d 417, 435-436 (1978).

[13] The two suspension terms were only during March 16, 2018 to April 16, 2018 (arguably) and August 18, 2019 to January 18, 2020, respectively. The California State Bar has refused to reinstate Ms. Albert's license back to active and in good standing for failing to pay $37,555.00 in State Bar costs (and for failing to pay $5,765.00 in discovery sanctions in 2018 – until the Ninth Circuit reversed the nondischargeability ruling on June 10, 2020).

17

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

### C. Constitutionality under the First and Fourteenth Amendment Right to Practice Law

The *Selling* factors necessarily preclude a federal court from using a State Bar court ordered suspension to suspend a member of the federal court if to do so would offend the member's constitutional rights because an attorney's opportunity to practice law is a fundamental right. *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274 (1985)

An individual "has a property interest in the right to practice [her] profession that cannot be taken from [her] without due process."(*Conway v. State Bar* (1989) 47 Cal.3d 1107, 1113.) "The right to pursue one's chosen profession free from arbitrary state interference is protected by the due process clauses of both the state and federal Constitutions. (Cal. Const., art. I, § 7; U.S. Const., 14th Amend.; *Endler* v. *Schutzbank* (1968) 68 Cal.2d 162, 169.

The California State Bar has conditioned the reinstatement of Ms. Albert's law license on payment of $37,555.00 in State Bar disciplinary costs that were assessed in the disciplinary proceedings. Cal. Bus. & Prof. Code § 6140.7." [Ex 60 2:278].

The cost bill was mandatory and assessed to pay for both the costs of the investigation and disciplinary hearing. It increases the amount assessed against the attorney at each stage, thereby chilling an attorney with a legitimate defense from defending based on inability to pay for a full trial. The attorney only does not pay if she is fully exonerated of all charges. Ms. Albert was exonerated from some, but not all of the charges so she was levied with 100% of the disciplinary costs with evidence supplied by the State Bar employee who investigated the charges and those at the hearing. This is the same due process violation as found in *California Teachers Assn. v. State of California* 20 Cal.4th 327 (1999)..

### 1. The $37,555.00 Disciplinary Cost Bill is an Excessive Fine or Penalty

Under the Eighth Amendment to the U.S. Constitution, "[p]rotection against excessive punitive economic sanctions secured by the Clause is [] both "fundamental to our scheme of ordered liberty" and "deeply rooted in this Nation's history and tradition." *McDonald*, 561 U. S., at 767" *Timbs v. Indiana*, 139 S. Ct. 682, 203 L. Ed. 2d 11 (2019).

The State Bar persuaded the Ninth Circuit to hold State Bar mandatory disciplinary costs under Bus & Prof Code §6086.10 are "fines or penalties payable to a governmental unit" and as such, are

18

nondischargeable under 11 USC. § 523(a)(7). Albert-Sheridan v. State Bar of Cal. (In re Albert-Sheridan), 960 F.3d 1188, 2020 U.S. App. LEXIS 18348, Bankr. L. Rep. (CCH) P83,534, 68 Bankr. Ct. Dec. 217, 2020 WL 3086631 (June 10, 2020) citing, *State Bar of Cal. v. Findley* (In re Findley), 593 F.3d 1048, 1050 (9th Cir. 2010).

Such "fines" that are excessive violate the Eighth Amendment. Ms. Albert urges this Court to consider the $37,555.00 in State Bar disciplinary costs possibly an "excessive fine" and refusal to reinstate Ms. Albert's license until that fine is paid an "excessive penalty" in violation of the Eighth Amendment, as such under *Selling*, reciprocal suspension would not be appropriate.

Shackling an attorney's license to debts so excessive to hinder the person's ability to support themselves offend the Constitution. (VIII Amend. U.S. Const., XIV Amend. U.S. Const.). It is widely recognized that "the revocation or suspension of [a Bar] license, even for a 6-month period, can and often does constitute a severe personal and economic hardship." *Berlinghieri v. Department of Motor Vehicles* 33 Cal 3d 394, 398 (1983)

The State Bar has refused to reinstate Ms. Albert's license for over a year after her last actual suspension ended.

In *Timbs v. Indiana*, 139 S. Ct. 682, 203 L. Ed. 2d 11 (2019)., a person convicted on drug charges had his jeep taken from him by the government in order to satisfy a $8,000.00 fine. The U.S. Supreme Court found that taking a jeep worth $40,000.00 in order to satisfy a $8,000.00 fine excessive.

The Ninth Circuit relied on *Timbs v Indiana* decision in expanding claims based on the Eighth Amendment to the civil context. The Court recognized the Eighth Amendment was a "core right worthy of constitutional protection." *Pimentel v. City of Los Angeles*, 966 F.3d 934, 937-938 (9th Cir. 2020).("We hold that the *Timbs* decision affirmatively opens the door for Eighth Amendment challenges to fines imposed by state and local authorities." Id. 938).

The Eighth Amendment applies to the conditional reinstatement based on payment of State Bar disciplinary costs because the State Bar has characterized those costs as fines or penalties. The Ninth Circuit made clear in *Pimental v City of Los Angeles* that Eighth Amendment protection extends

19

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

to protection against excessive State and municipal fines. *Pimentel v. City of Los Angeles*, 966 F.3d 934, 938 (2020).

Here, the State Bar continues to keep Ms. Albert's license under lock and key, presently worth $167,400.00 ($55,800.00 per year), for failure to pay a fine of $37,555.00 in State Bar disciplinary costs under §6086.10. Ms. Albert has been unable to reinstate her license due to her involuntary ability to pay the State Bar disciplinary costs.  Her Schedule I she filed with the U.S. Bankruptcy court in 2018 showed both the current worth of her license with her monthly income of $4,650.00 and her inability to afford to pay a $37,555.00 fine, meeting both tests under the excessive fine or penalty clause of the Eighth Amendment as analyzed in *Timbs v. Indiana*, 139 S. Ct. 682, 203 L. Ed. 2d 11 (2019)..

Failure to reinstate Ms. Albert's license for failure to pay the State Bar costs assessed at the disciplinary hearing is nothing more than another way of imposing a conditional disbarment for failure to pay costs. Fines cannot be used to extend a suspension any more than they can be used to extend incarceration. [14]

The U.S. Supreme Court is keenly aware of how political motives may creep into scenarios that result in excessive fines. "For good reason, the protection against excessive fines has been a constant shield throughout Anglo-American history: Exorbitant tolls undermine other constitutional liberties." (*Timbs.*). "Excessive fines can be used, for example, to retaliate against or chill the speech of political enemies." *Timbs v. Indiana*, 139 S. Ct. 682, 203 L. Ed. 2d 11 (2019).

There is some evidence of such motives here. [Ex 19, 20, 31, 38]

---

[14] This is consistent with US Supreme Court precedent. The Highest Court of this nation has only left this issue is open if the State Bar were imposing the fine to extend probation. "By employing this alternative [a fine and probation], the sentencing judge could assure that the youthful offender would not receive the harsh treatment of incarceration, while assuring that the offender accepts responsibility for his transgression." *Durst v. United States*, 434 U.S. 542, 553-554, 98 S. Ct. 849, 855, 55 L. Ed. 2d 14, 23 (1978).

20

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

Even absent a political motive, "fines may be employed 'in a measure out of accord with the penal goals of retribution and deterrence,' for 'fines are a source of revenue,' while other forms of punishment 'cost a state money.'" *Timbs v. Indiana*, 139 S. Ct. 682, 203 L. Ed. 2d 11 (2019).

Here, the State Bar Disciplinary costs are a source of revenue for the State Bar. Bus & Prof Code §6086.10. [Ex 60 2:278].

To protect against excessive fines, "the court is required to consider the defendant's financial resources, assets, projected income, and financial obligations, based on an affidavit supplied by the defendant." *United States v. Dubose*, 146 F.3d 1141, 1143-1144 (9th Cir. 1998).

The State Bar Court did not consider Ms. Albert's financial condition or ability to pay. [Ex 29, 44 2:99,181].

To protect against disproportional fines the Ninth Circuit uses the *Bajakajian* factors comparing the fine to the nature of the underlying offense. *Pimentel v. City of Los Angeles*, 966 F.3d 934, 937-938 (9th Cir. 2020)..The $37,555.00 in State Bar costs is grossly disproportional to the underlying offense because (1) the nature and extent of the underlying offense did not harm the public or the courts; it was not a crime, an act of moral turpitude, a misappropriation of funds or even a finding of incompetence, there was no serious harm; (2) the underlying offense did not relate to other illegal activities; (3) the State Bar had other penalties that could have been imposed for the offense such as a private reprimand, public reprimand or performing pro bono hours instead of payment; and (4) the extent of the harm caused by the offense was de minimus for the foregoing reasons as stated herein.

For this reason, under *Selling,* the federal court should not impose reciprocal suspension due to the Eighth Amendment rights implications and ask the clerk of the Court to change her membership status back to active.

## 2.  Ms. Albert is Not Being Treated Equally Under the Law

21

The equal protection clause is violated when a person is subjected to harsher punishment due to their lack of wealth. (*Williams v. Ill.*, 399 U.S. 235, 236, 90 S. Ct. 2018, 2020, 26 L. Ed. 2d 586, 590 (1970))

The State Bar imposed a $37,555.00 fine of State Bar disciplinary costs on Ms. Albert and then automatically converted it into an indeterminate suspension aka a conditional disbarment solely because Ms. Albert cannot pay forthwith in full. This indefinite suspension violates the First, Eighth and Fourteenth Amendment. I Amend. U.S. Const., VIII Amend. U.S. Const., XIV Amend. U.S. Const.

"[T]he Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full." *Tate v. Short*, 401 U.S. 395, 398, 91 S. Ct. 668, 671, 28 L. Ed. 2d 130, 133 (1971).

Since taking a law license is quasi criminal in nature, then it should follow the suspension term of a lawyer's license is analogous to a jail term. *In re Ruffalo* 390 U.S. 544, 550-551, 20 L. Ed. 2d 117, 121-123, 88 S. Ct. 1222, (1968)

Ms. Albert was in bankruptcy and petitioned the State Bar Court, the Review Department, and the California Supreme Court for relief by way of waiver of State Bar costs. Although the State had evidence Ms. Albert could not pay the State Bar disciplinary costs, she was denied relief in all three venues. [Ex 36, 38, 39 2:156, 164-171].

In *Williams v Ill.*, the U.S. Supreme Court held "when the aggregate imprisonment exceeds the maximum period fixed by the statute and results directly from an involuntary nonpayment of a fine or court costs we are confronted with an impermissible discrimination that rests on ability to pay." *Williams v Ill, Id.* At 240-241.

By continuing the suspension of Ms. Albert's license beyond the maximum suspension laid out in the Orders, the State Bar has parlayed Ms. Albert's State Bar costs into an indeterminate term of suspension, accomplishing indirectly that which it could not have done directly in its Order.

22

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

Other attorneys who are suspended for the same length of time as Ms. Albert but have the ability to pay the $37,555.00 in State Bar disciplinary costs, have their license automatically reinstated back to active and in good standing. This impermissible discrimination rests on ability to pay.

For this reason, the federal court should not impose reciprocal suspension due to the Equal Protection implications and Order the clerk of the Court to change Ms. Albert's membership status back to active.

### D.  The 30-Day Suspension Order (2018)

#### 1.  Some Charges Were Dismissed After Trial

The State Bar charged Ms. Albert with a multitude of violations. In the end, the Review Department found Ms. Albert disobeyed a court order to pay discovery sanctions to opposing counsel/parties and failed to cooperate and communicate in a State Bar investigation.

The California Supreme Court Order provided for a 30-day actual suspension in 2018 for purporting to violate three Court orders by failing to pay civil discovery sanctions to opposing counsel in an unlawful detainer case. The California Supreme Court Order stated:

> Lenore LuAnn Albert is suspended from the practice of law for the first 3 0 days of probation, and she will remain suspended until the following conditions are satisfied:
>
> > a. She pays the following sanctions (or reimburses the Client Security Fund, to the extent of any payment from the Fund to the payees, in accordance with section 6140.5), and furnishes proof to the State Bar Office of Probation in Los Angeles: the $2,675.50, $1,242.50, and $1,820 sanctions awards issued on August 31, 2012, by the Superior Court of Orange County in case no. 30-2012-00568954-CL-UD-CJC, plus 10 percent interest per year from August 31, 2012.
> >
> > b. If she remains suspended for two years or more as a result of not satisfying the preceding requirements, she must also provide proof to the State Bar Court of her rehabilitation, fitness to practice, and learning and ability in the general law before her suspension will be terminated. (Rules Proc. of State Bar, tit. IV, Stds. for Atty. Sanctions for Prof. Misconduct, std. 1.2(c )( 1 ). )

Cal. Sup. Ct. Order. P. 1 dated 12/13/2017 [Ex 30 2:101-102].

23

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

The California State Bar refused to reinstate Ms. Albert's license after she served her 30-day suspension on the grounds she needed to show proof of payment of paying the civil discovery sanctions as outlined in (a). Ms. Albert contended they were discharged on February 19, 2019 because she was in bankruptcy and her bankruptcy was converted to a Chapter 7. On June 10, 2020 the Ninth Circuit Court of Appeals held that the civil discovery sanctions described in section (a) of this order were dischargeable. As such, her conditions for the 30-day suspension had been fully satisfied within 2 years. She was relieved from paying the sanctions to opposing counsel under (a) because the debt was discharged on or about February 18, 2019 and that discharge occurred within two years, satisfying subsection (b). However, there is nothing to indicate on the State Bar website that the California State Bar has terminated her suspension in this regard. Neither charge pass the Selling test to justify a reciprocal suspension, whatever that means in this regard.

## 2. The Sisson Emails

First, the State Bar charged Ms. Albert with failing to cooperate and communicate in a State Bar investigation as to the Jodi Sisson complaint. The State Bar investigator testified Ms. Albert never responded to her investigative letter she sent Ms. Albert in July 2015. On cross examination, Ms. Albert pulled out exhibit 83 to prove in fact the State Bar investigator received a communication on the Sisson matter from Ms. Albert. In response, the State Bar prosecutor changed the charge to being one where the communication received was not "substantive" enough. Because Ms. Albert was not apprised in detail of what she was being charged of until the middle of trial. This failed to provide the type of due process required as laid out in *Selling* and *Ruffalo*.

Second, the State Bar investigator lacked candor as there was no mention of receiving the timely and substantive July 13, 2015 email Ms. Albert sent to the State Bar investigator about the Jodi Sisson investigation at trial. [Ex76 4:10-11]. This failed to provide the type of sufficient evidence warranted to support a reciprocal suspension under the second *Selling* factor.

24

Additionally, a reciprocal suspension would violate Ms. Albert's First Amendment right. The State Bar found that Ms. Albert violated Cal Bus & Prof Code § 6068(i) because she did not "substantively" respond to a State Bar investigation letter dated July 7, 2015 in a timely manner.

The State Bar's position was that although Ms. Albert was communicating on multiple other investigations, her failure to communicate specifically in a timely and substantive manner as to the Sisson matter was a failure to cooperate in the State Bar investigation. [Ex 75, 77-84 4:7-9, 12-39].

The State Bar ignored Ms. Albert's email to the State Bar investigator that same day or the emails she sent previously. [Ex 73, 74, 76 4:1-6, 10-11].

Taking it into context the State Bar investigator did not respond to Ms. Albert's email about Sisson on July 13, 2015, either. It appeared the State Bar investigator was more interested in the *Koshak v 10675 S Orange Park Blvd LLC* investigation. [Ex 76-80 4:10-31].

Ms. Albert even communicated a tax lien that was sent to her on Ms. Sisson's home the following year. [Ex 85 4:40-42]. Ms. Sisson was someone Ms. Albert warned the State Bar about in 2014 because she was known to be associated with the Cal 18 via an email sent from Rene Powers to Leslie Westmoreland. [Ex 16 1:34-46].

The State Bar fixated on Ms. Albert email to the State Bar in November 2015 where she inquired about the Sisson matter, attached a prior email showing Jodi Sisson had a large unpaid attorney fee bill.

Ms. Albert's failure to communicate or cooperate did not result in some serious harm. The Review Department opinion provided:

> As for her contention that her later participation in these proceedings is a defense to her culpability, she is incorrect. An attorney who fails to respond to investigatory inquiries, without more, violates the statute.

Review Dept. p 8. [Ex 28 2:80-99].

The U.S. Supreme Court found disbarring an attorney for failure to answer questions without more to be unconstitutional. It violated the attorney's First Amendment rights where no serious harm

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

results. *Konigsberg v. State Bar of Cal.,* 353 U.S. 252, 261-262, 77 S. Ct. 722, 727-728, 1 L. Ed. 2d 810, 819 (1957).

The record failed to show any serious harm resulted and the State Bar was explicit it was disciplining Ms. Albert for her failure to respond without more. Exclusions from the Bar on that basis is not constitutionally permissible. *Konigsberg v. State Bar of Cal.,* 353 U.S. 252, 261-262, 77 S. Ct. 722, 727-728, 1 L. Ed. 2d 810, 819 (1957).

For example, the U.S. Supreme Court found that a harshly written letter by attorney Snyder containing "a lawyer's criticism of the administration…or inequities" to a court clerk did not "support a finding of contemptuous or contumacious conduct," or a finding that a lawyer is "not presently fit to practice law in the federal courts." Nor does it rise to the level of "conduct unbecoming a member of the bar" warranting suspension from practice." *In re Snyder*, 472 U.S. 634, 647, 105 S. Ct. 2874, 2882, 86 L. Ed. 2d 504, 514 (1985).

Like *Snyder*, Ms. Albert lashed back at the State Bar after dunning her with investigation letters to respond to over the past year. The Review Department pointed out that "In this August 24,2015 [*sic*], email, Albert complains about the State Bar's requests that she respond to complaints made against her. She demanded that "only legitimate complaints" be forwarded to her; and accused the State Bar of abusing its power by employing a "fishing expedition to try to conjure up a complaint" against her. She stated, "There will be no further response from me to your letters or phone calls for more information. I find your actions to be retaliatory." Albert copied this letter to the "California Supreme Court, [the] California Attorney General's Office, [and] the FBI." Review Dept. Opn. P. 7 fnt 6.

Like *Snyder,* Ms. Albert's communications to the State Bar "do [] not support a finding of contemptuous or contumacious conduct, or a finding that a lawyer is "not presently fit to practice law in the federal courts." Nor does it rise to the level of "conduct unbecoming a member of the bar"

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

warranting suspension from practice." *In re Snyder*, 472 U.S. 634, 647, 105 S. Ct. 2874, 2882, 86 L. Ed. 2d 504, 514 (1985).[15]

This court should conclude that "[a]n examination of the record reveals no basis for the [California State Bar] court's conclusion that the speech presented a substantial likelihood of material prejudice." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1038-1039, 111 S. Ct. 2720, 2726, 115 L. Ed. 2d 888, 900-901 (1991). [Vol 4].

"At the very least, our cases recognize that disciplinary rules governing the legal profession cannot punish activity protected by the First Amendment, and that First Amendment protection survives even when the attorney violates a disciplinary rule he swore to obey when admitted to the practice of law." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1038-1039, 111 S. Ct. 2720, 2726, 115 L. Ed. 2d 888, 900-901 (1991).

Like *Gentile*, it cannot be said that Ms. Albert's conduct demonstrated any real or specific threat to the legal process, and her statements in the emails to the State Bar investigator, the California Supreme Court and the FBI have the full protection of the First Amendment. *Gentile v State Bar of Nev. Id* at 1058.

Under *Selling*, reciprocal suspension is not warranted for three reasons: (1) a federal court would require more than a late response to a letter; (2) the record omitted the July 15, 2015 letter timely responding to the investigation; and (3) the First Amendment prohibits the federal court from suspending an attorney over a snarky comment in her letter. *See also, In re Scannell*, 2011 U.S. App. LEXIS 26705, *44-46 (9th Cir. 2011).

### 3. The Civil Discovery Sanctions $5,738.00

---

[15] See also, *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1032, 111 S. Ct. 2720, 2723, 115 L. Ed. 2d 888, 897, (1991). letters that do not present a "clear and imminent danger" to anyone fail to justify discipline.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

Ms. Albert was also suspended, in part for failing to obey a court order, namely failing to pay three discovery sanctions ordered in the case of 10675 S Orange Park Blvd LLC v Koshak.

Civil discovery sanctions are not reportable to the State Bar. (Cal. Bus & Prof Code § 6068(o).). On <u>December 15, 2015,</u> the State Bar filed a NDC for Ms. Albert's failure to pay civil discovery sanctions in an unlawful detainer action. Ms. Albert argued the orders were void, but the State Bar court refused to admit any evidence on that point finding it irrelevant. Cal Bus & Prof Code §6103 only finds an attorney culpable if the attorney does not have a 'good faith' belief that she did not have to follow the order.

Phil Green did not move to have the court orders complied with under 128.5, 128.7 or 177.

To prove a willful violation of section 6103, OCTC must establish that the attorney knew the order was final and binding. *(In the Matter of Maloney and Virsik* (Review Dept. 2005) 4 Cal. State Bar Ct. Rptr. 774, 787 [attorney's knowledge of final, binding order is essential element of§ 6103 violation].) *Caldwell v. Samuels Jewelers* (1990) 222 Cal.App.3d 970, 975-976 [order imposing sanctions on attorney pursuant to Code Civ. Proc., *§* 177.5 for unjustified violation of court order is appealable as final order on collateral matter directing payment of money]; Code Civ. Proc., § 904.1, subd. (b).

Such disciplinary action violated the due process clause because Ms. Albert believed those orders did not in good faith need to be followed. The record shows that Opposing counsel never attempted to collect on the orders and only filed an Abstract of Judgment to support the existence of those orders three days after the State Bar charged Ms. Albert with violating them. Since the Abstract of Judgement did not exist until after the NDC was filed, Ms. Albert's due process rights were violated. [Ex 25, 26 2:69-76].

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

Second, California precedent held that an attorney is only required to obey a court order if that attorney fails to take steps to have it modified or vacated, regardless of belief that the order is invalid. *Maltaman v. State Bar* 43 Cal.3d 924, 951-952 (1987).[16]

"In the absence of statutory authorization, a trial court may not impose attorney fees as a sanction against an attorney. "`Such power in the trial court, unfettered and unbridled, without appropriate safeguards and guidelines,'" could lead to the imposition of sanctions not for misconduct but for forceful advocacy." *In re Marriage of Flaherty*, 31 Cal.3d 637, 653 (1982) (citations omitted.).

The trial court was not authorized to impose the civil discovery sanctions because it did not comport with the Civil Discovery Act which required notice of at least 16 court days prior to hearing to the attorney. CCP §2023.040. Here, the opposing counsel filed their motions on August 24, 2012 and the court heard the matter on August 30, 2012. [Ex 61-64 3:1-42]. CCP §1005.

When Ms. Albert attempted to provide evidence that the orders failed to give the correct notice, and that she took steps to have the orders modified or vacated, the State Bar kept objecting and the State Bar Court sustained the objecting on the grounds the orders were "final" but final does not mean valid. The State Bar prosecutor concealed the material fact that Ms. Albert had appealed the sanctions by representing to the court that they put the entire file into the trial exhibit. Ms. Albert did appeal the

---

[16] Ms. Albert was ordered to take and pass the MPRE as part of her punishment. She did on or about November 10, 2018 and passed. [Ex 2 1:2]. While studying she took the practice MPRE. One of the test questions in Practice Exam #2 of the NCBE asked if the attorney violated the Rules of Professional Responsibility by not following a Court Order, he believed in good faith he ought not follow. The answer was that he did not violate the Rule. A true and correct copy of that Exam Question and Answer is provided in Exhibit 3 of the Excerpts of Record. [Ex 3 1:3-7]. This is further evidence that this Court should not impose reciprocal suspension under *Selling* factor 1, 2 or 3. Ms. Albert sat for the State Bar Ethics School on March 9, 2021 of this year and passed that one, too. [Ex 4 1:8-10].

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

sanctions order, but the appeal was dismissed because the sanctions were civil discovery sanctions less than $5,000.00 each making them nonappealable. [Ex 65, 68 3:44-46, 60-61.].

Ms. Albert also took the step of voiding the orders by filing a motion to peremptory strike the Commissioner due to bias. [Ex 61-64, 66-67 3:1-43, 47-59]. Ms. Albert tried to show the court that the orders were not the result of a properly noticed motion as required by statute. There was no evidence that opposing counsel believed the orders were valid until the NDC was filed.

The State Bar's own precedent, citing, *People v. Gonzalez*, 12 Cal.4th 804 at p. 818-819 (1996) found that a lawyer can challenge the validity of a court order and "under California law may disobey the order and raise his jurisdictional contentions when he is sought to be punished for such disobedience." *In the Matter of Respondent X* 3 Cal. State Bar Ct. Rptr. 592, 604 (Rev; Dept. 1997).

Ms. Albert was not given notice that she would not be allowed to present evidence showing she took steps to void the orders or that the State Bar was not going to consider that part of the violation.

That defense would have demonstrated she had a good faith belief that she did not have to obey those orders. Since the State Bar court refused that evidence and gave Ms. Albert no notice that such a defense was not available to her, the evidence in the record is insufficient to find Ms. Albert culpable. [Ex 28 2:80-98; Ex 125 7:122, 135-137, 140-141; Ex 126 8:77, 81, 144-145].

Consequently, due process was not afforded Ms. Albert. She was not on notice that her steps would not satisfy the *Maltaman* standard nor that there was a valid judgment out there until two days <u>after</u> the State Bar filed their charges.

Finally, the *Selling* factor is palpable. Norman Koshak testified the discovery sanctions were discharged in his bankruptcy. Jennifer Needs who testified for the State Bar had a complaint against her for going into the Koshak home without a search warrant and coming out with papers in her hand. The Sheriff who cancelled the lock out due to the notes being forged was away in a seminar when

30

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

someone took a cancelled Notice of restoration whited out the date and had the Koshaks leave their house. There was so much wrong with the entire fraud that permeated this case and there was no State Bar investigative report brought out at trial to even figure out who filed the State Bar complaint. The Koshaks did not file the complaint and Phil Green never showed up if he were the complainant. The docket showed the Commissioner recused himself, making the orders void. The plaintiffs waived collecting fees at the UD trial other than a $20,000.00 statutory maximum and nothing even existed until after the charges were filed. Then Attorney Needs filed an abstract of judgment only after the State Bar's NDC was filed, thus giving no notice any valid order even existed. [Ex 69, 70, 71, 72 3:62-66; Ex 66-67 3:47-59; Ex 25-26 2:69-76].

Ms. Albert humbly submits the *Selling v. Radford*, 243 U.S. 46, 50, 37 S. Ct. 377, 378, 61 L. Ed. 585, 587 (1917).factors are satisfied under all three prongs for this Court to find that reciprocal suspension would not be warranted on this first suspension order.

**E.  The 6-month Suspension Order (2019)**

On July 10, 2019, the California Supreme Court issued a second Order of Suspension which provided:

1. Respondent is suspended from the practice of law for a minimum of the first six months of probation, and Respondent will remain suspended until the following requirements are satisfied:

i. Respondent makes restitution to the following payees or such other recipient as may be designated by the Office of Probation or the State Bar Court (or reimburses the Client Security Fund, to the extent of any payment from the Fund to such payee, in accordance with Business and Professions Code section 6140.5) and furnishes satisfactory proof to the State Bar's Office of Probation in Los Angeles:

(1) Dr. Nira Schwartz-Woods in the amount of $20,000 plus 10 percent interest per year from April 1, 2016; and

(2) Fin City Foods in the amount of $47.00.

31

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

ii. If Respondent remains suspended for two years or longer as a result of not satisfying the preceding requirement, Respondent must also provide proof to the State Bar Court of rehabilitation, fitness to practice and present learning and ability in the general law before the suspension will be terminated. (Rules Proc. of State Bar, tit. IV, Stds. for Atty. Sanctions for Prof. Misconduct, std. 1.2(c)(l).)

Cal. Sup. Ct. Ord. p. 1 dated 7-10-2019 [Ex 45 2:184-185].

Like the first Supreme Court Order, this ordered issued an actual suspension of a definite time period conditioned on payment of fees to third parties. Here, the California Supreme Court Ordered that Ms. Albert pay civil discovery sanctions to Attorney Devin Lucas aka Fin City Foods $47.00 plus pay former client Nira Woods $20,000.00 plus interest. Like the first suspension order, neither of these situations involved a payout from the Client Security fund.

Like the Discovery sanctions in the first Order, these amounts were listed in Ms. Albert's bankruptcy petition and discharged in bankruptcy on or about February 26, 2019. [Ex 31-32 2:103-124]. There was no objection filed by either Ms. Woods or Mr. Lucas aka Fin City Foods to Ms. Albert's discharge. Furthermore, the $20,000.00 was discharged in bankruptcy. *Scheer v State Bar* (In re Scheer) 819 F3d 1206 (9th Cir 2016).[Ex 31-32 2:103-124; Ex43 2:178].

It has been more than six months since the Order was issued and the debts were discharged. As such, her conditions for the 6-month suspension had been fully satisfied within 2 years. She was relieved from paying the sanctions to opposing counsel under (a) because the debt was discharged on or about February 18, 2019 and that discharge occurred within two years, satisfying subsection (b). (*Albert-Sheridan v. State Bar of Cal*. (In re Albert-Sheridan), 960 F.3d 1188, 1194 (9th Cir. 2020).).

Yet, like the first suspension order there is no indication that the California State Bar has reinstated Ms. Albert's license to practice law.

Since the terms of her suspension were fully satisfied, there would be no legitimate reason for this Court to impose reciprocal suspension now. Furthermore, the record establishes that the *Selling* factors are present to substantiate reciprocal suspension was never warranted. *Selling v. Radford*, 243 U.S. 46, 50, 37 S. Ct. 377, 378, 61 L. Ed. 585, 587 (1917).

1. **Nira Woods $20,000 Fee Dispute**

32

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

**Count One of the Amended NDC charged:**

On or about October 17, 2014, Nira Schwartz-Woods employed respondent to perform legal services, **namely to represent her in a prospective patent infringement litigation, and to associate with other counsel in furtherance of the patent litigation**, which respondent intentionally, recklessly, or repeatedly failed to perform with competence, in willful violation of Rules of Professional Conduct, rule 3-110(A), **by failing associate with other counsel in furtherance of the patent litigation and failing to take any other action on the client's behalf to advance her legal interests.**

 Amended NDC p. 2 [Ex 37 2:158-163] [bold added]

Woods State Bar Investigation Report stated that Ms. Albert was supposed to represent Ms. Woods in a patent litigation and that Mr. Klinck was to help but she failed to contact Klinck so he would not help her. That Ms. Albert abandoned her client, then kept the $20,000.00 without giving an accounting. [Ex 120 6:76-82]. It was an attorney-client fee dispute that the State Bar went after.

Ms. Albert knew this was false. She presented evidence that Ms. Albert interviewed Mr. Zimmerman who Ms. Woods then retained, and Zimmerman drafted and filed a patent infringement complaint against AT&T as Ms. Woods requested. [Ex 95-116 6:1-51 (Emails, scheduling, and example of work done); Ex 117-119 6:52-75 (Patent litigation); Ex 97 6:8-9 (Retainer letter)].

After Ms. Albert presented her evidence and exchanged Trial Exhibits, the State Bar Court found "Respondent failed to apply **due diligence** in her performance of any tasks she was retained to perform. Therefore, Respondent failed to take any steps to advance the patent infringement litigation she was hired to coordinate. The OCTC established by clear and convincing evidence that Respondent neither acted as a liaison nor consulted with the patent infringement litigators in a manner that would advance the litigation on behalf of her clients." State Bar Opinion p. 6. [Ex 55 2:240-2264].

Yet, there was no charge of "due diligence" in the NDC, so Ms. Albert was not prepared to defend against it at trial. The facts asserted by the State was that no patent litigation was ever filed.

Changing the nature of the charge at trial violated Ms. Albert's due process rights. (See, *Ruffalo*.) [Ex 37 2:158-164]. Thus, violating her due process right to notice of what the exact charge she needed to defend against was justifying this federal court in refusing to follow the California State Bar with reciprocal suspension. (See, *Ruffalo*.) [Ex 37 2:158-164].

**Count Two:**

The Amended NDC charged in Count Two:

33

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

On or about October 17, 2014, respondent received on behalf of respondent's client, Nira Schwartz-Woods, the sum of $20,000 as advanced fees for legal services to be performed. Respondent thereafter failed to render an appropriate accounting to the client regarding those funds following the c1ient's request for such accounting or refund upon the termination of respondent's employment on or about April 5, 2016, in willful violation of the Rules of Professional Conduct, rule 4—100(B)(3).

Amended NDC p. 2 [Ex 37 2:158-164].

Ms. Albert provided a retention letter showing that Ms. Albert agreed to assist Ms. Woods for one year at the flat rate of $20,000.00 for the year. True retainers do not require an accounting and monthly billing.  After the prosecution, the State Bar Court opined Ms. Albert violated Rule 4-100(B)(3) because "In this case, there is no evidence that Respondent devoted certain blocks of time to Dr. Woods' matter or that she turned away other business in order to proceed with her litigation." (Court Opn. P. 6). [Ex 55 2:240-264].

Like the first count, Ms. Albert had no notice or opportunity to be heard that she was going to be prosecuted for not providing evidence of blocks of time she spent or if what other cases she may have turned away at the time. The charge she was noticed with was **failing to provide an accounting on April 5, 2016.** [Ex 37 2:158-164; Ex 120 6:76-82].

The State Bar court discounted the fact that Woods never disclosed there was an attorney Zimmerman or that she actually filed her patent litigation in New Jersey. The Court also lent a blind eye when Ms. Albert showed the Court that Woods asked Ms. Albert to submit the $20,000.00 as part of a cost bill in her litigation against UC Regents in California Superior Court. [Ex 121 6:83].

**Count Three:**

The Third Count of the NDC charged,

On or about October 17, 2014, respondent received advance fees of $20,000 on behalf of a client, Nira Schwartz-Woods, **to represent her in a prospective patent infringement litigation, and to associate with other counsel in furtherance of the patent litigation.** Respondent failed to perform the legal services she agreed to perform for the client, and therefore did not cam any of the advanced fees paid. **Respondent failed to refund promptly, upon respondent's termination of employment on or about April 5, 2016 any part of the $20,000 fee to the client,** in willful violation of Rules of Professional Conduct, rule 3—700(D)(2).

34

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

Amended NDC p. 3. [Ex 37 2:158-164].

After Ms. Albert showed that a patent case was actually filed and Attorney Zimmerman was a competent patent lawyer hired to represent Nira Woods, the prosecution changed.

After the State Bar disciplinary hearing, the State Bar Court found the State Bar prosecution proved Count Three because "Notwithstanding Respondent's characterization of the fees, Respondent did not perform any services of value on behalf of Dr. Woods, did not earn any portion of the fees, and thus, had an obligation to return the unearned amount. Dr. Woods was entitled to a refund of the entire fee since she received nothing of value from Respondent." State Bar Opn. P. 7. [Ex 55 2:240-264].

The U.S. Supreme Court issued guidance on what due process in an attorney disciplinary proceeding requires:

> These are adversary proceedings of a quasi-criminal nature. Cf. *In re Gault*, 387 U.S. 1, 33. The charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh. How the charge would have been met had it been originally included in those leveled against petitioner by the Ohio Board of Commissioners on Grievances and Discipline no one knows.
>
> This absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges deprived petitioner of procedural due process. *Reversed*.
>
> *In re Ruffalo*, 390 U.S. 544, 551-552, 88 S. Ct. 1222, 1226, 20 L. Ed. 2d 117, 122-123 (1968).

Like the first and second count, Ms. Albert was not given the "precise nature of the charges." She had no notice or opportunity to be heard that she was going to be prosecuted for not performing "services of value" when the charge was that she was supposed to be represented in a patent lawsuit because she wanted to sue AT&T.

35

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

Moreover, Ms. Albert hired Attorney Clare to represent her before the State Bar. The evidence showed Ms. Albert sent Attorney Clare 4,000 pages documenting the work Ms. Albert did on Woods's case. [Ex 122-124 6:84-87].

Consequently, Ms. Albert brought proof to trial to attack those facts based on the charges in the amended NDC. She had no opportunity to address or defend the charges stated in the State Bar Court opinion. As such, this Court should find Ms. Albert has proven the disciplinary proceeding lacked due process and sufficient evidence, making reciprocal suspension inappropriate under *Selling*.

**Count Four**

Count four was premised on Ms. Albert's failure to cooperate in the State Bar's investigation of the Woods matter. The State Bar opined "Respondent failed to give a substantive response to the allegations of misconduct contained in the State Bar's letter dated June 3, 2016. Instead, after she received the letter, Respondent sent acerbic emails that did not address the information sought regarding Dr. Woods' complaint." State Bar Opn. P. 8.

Unlike the Sisson matter, Ms. Albert was actually in Court with the State Bar judge, prosecutor and State Bar investigator during June and July 2016. This was during the time of the first State Bar disciplinary proceeding. She hired Attorney Clare to represent her. It was attorney Clare who failed to communicate with the State Bar. He refused to send over 4,000 pages of documents of work Ms. Albert did on Woods's case. [Ex 122-124 6:84-87].

A charge of professional misconduct must be supported by clear and convincing evidence. The burden on Ms. Albert was merely to show that reasonable doubt existed as to her purported guilt. *Price v State Bar* (1982) 30 Cal 3d 536, 547. As such, Ms. Albert should have been accorded the benefit of doubt in assuming the continued cooperation with the State Bar within reason to the extent it did not impact her solo practice, "constituted contemporaneous cooperation with the State Bar regarding additional investigative letters subsequently sent to [Ms. Albert]." *In the Matter of Hundin* (Review Dept. 1997) 3 Cal State Bar Ct. Rptr. 657.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

Additionally, the State Bar Court Opinion fails to show any "serious harm" resulted from Ms. Albert's purported failure to "substantively" reply while she was in the middle of trial with the State Bar on the first disciplinary proceeding – especially when she was represented by counsel.

**Count Five:**

The fifth count was that Ms. Albert did not give Woods her client file. It was he said-she said. Ms. Albert testified Woods had her files. Woods testified she did not. Ms. Albert represented Woods to a successful jury verdict in excess of $130,000.00 against UC Regents. The State Bar Court Opinion did not make any finding of harm if Woods did not obtain her files and there is none under the circumstances of this case. There was no proof that Woods did not in fact have her files as testified to by both Ms. Albert and her former legal assistant Bianca Barrientos.

An email in the file showed that Woods kept her files on sticks. [Ex 105 6:32-37.] This was testified to at trial with regard to the medical records.

She had already won her trial. There was no appeal. Zimmerman handled the patent litigation in New Jersey. Without any serious harm as a result, this Court should not impose reciprocal suspension.

**Count Six and Seven Dismissed:**

The State Bar prosecutor amended their NDC to assert that Ms. Albert lied to the court by submitting the Woods retainer agreement she mailed to Woods on the patent issue and attached to her declaration to the State Bar court. The State Bar court properly found the State Bar prosecutor failed to prove this count.

**2. Lucas/Fin City Foods Civil Discovery Sanctions $47.00**

**Count Eight charged:**

Respondent disobeyed or violated an order of the court requiring respondent to do or forbear an act connected with or in the course of respondent's profession which respondent ought in good faith to do or forbear by failing to comply with the c0urt's minute order dated February 10, 2015 , which required that respondent pay a sanction of $875 in the case entitled Bonnie L. Kent and Teri Sue Kent Love in their capacity as Joint Trustees of the James Kyle Kent, Jr. "Spousal Trust" et al. v. Fin City Foods, Inc., et al., Orange County Superior Court case number 30-2014—O0713792—CU-MC—CJ C

37

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

within 30 days of service of notice of ruling, in willful violation of Business and
Professions Code, section 6103.

The record showed that Ms. Albert overpaid Devin Lucas with multiple checks where she
wrote "State Bar blackmail and extortion" in the notation. [Ex 88 5:7-10]. The money was for civil
discovery sanctions the trial court issued after Devin Lucas assaulted Ms. Albert outside the court and
told the court that Ms. Albert's office was "raided" and soon would be shut down by the State Bar in
front of all the attorneys there for law and motion day. He also put it in a letter that Ms. Albert sent to
the State Bar before the discovery sanctions were issued. [Ex 86 5:1-4].

Devin Lucas took the stand and admitted to the assault. His letter asserting Ms. Albert's office
would soon be shut down by the States Bar was also admitted into evidence. The evidence showed Ms.
Albert paid Lucas $903.00 instead of $875.00. Instead of sending back the difference to Ms. Albert,
Lucas refused to cash a $99.00 check. The State Bar Investigation report did not mention this major
detail and the State Bar court found Ms. Albert owed Fin City Foods/Devin Lucas Civil Discovery
Sanctions of $47.00. [Ex 89-92 5:11-26].

Respondent did not respond until March 16, 2016, almost a year after the sanctions were
ordered and then, Respondent's emailed response was sent to a State Bar investigator
after Respondent had become the subject of an investigation. Respondent informed the
State Bar investigator that Respondent was forwarding eight "extortion" and "blackmail"
checks for varied amounts which totaled **$828.00.**

The same day that Respondent emailed her comments to Fin City Foods' counsel, Devin
Lucas, Lucas sent an email to Respondent which reminded her that the sanctions should
be made payable to his client, that the total amount of the sanctions ordered was $875,
not $828, and that a balance of $47 remained due to his client. Respondent subsequently
overpaid Fin City Foods when she forwarded a ninth check in the amount of $75. Lucas
sent Respondent a reimbursement check in the amount of what he considered to be a $75
payment. On March 18, 2016, Lucas requested that Respondent pay the $47 balance due
to Fin City Foods. To date, Respondent has failed to pay the balance due on the sanctions
order.

State Bar Opn p. 11 [Ex 55 2:240-264].

The State Bar Court found "Therefore, by failing to **timely pay** the full amount of the $875
sanctions in compliance with the February 10, 2015 court order in the Fin City Foods matter,
Respondent willfully violated section 6103." State Bar Ct. Opn. P. 11. Id. Bold added.

38

This time factor was detailed in the State Bar's notice or NDC. But the State Bar during the investigation monitored Ms. Albert's payment to Lucas making it appear no NDC would be filed if she complied with the State Bar's request. She complied with the State Bar's request but then the State Bar filed the NDC anyway. Additionally, the State Bar omitted the $99.00 check from the Investigative Report showing Ms. Albert accidently overpaid Lucas. [Ex 87, 94 5:5-6, 29-31].

So, there was notice and Ms. Albert was late in paying. But there was no serious harm.

The State Bar investigator who instructed Ms. Albert to pay Lucas on March 16, 2016 had already handled two other Lucas State Bar complaints. It was the third State Bar Complaint that attorney Devin Lucas had filed against Ms. Albert and it was Devin Lucas who admittedly previously accosted Ms. Albert outside the back courthouse on September 18, 2014. [Ex 91 5:21-22.].

Ms. Albert was instructed to send $75.00 and that is why she made the extra check for $75.00 and sent it to Mr. Lucas. If Mr. Lucas had cashed that check along with the others, there would not have been any outstanding balance. He chose not to. [Ex 88-89 5:7-12, Ex 90 5:13-20]. By August 2016 emails between Ms. Albert and the State Bar were being leaked out onto the internet. Communications as strained as they were breaking completely down. [Ex 93 5:27-28.].

The State Bar failed to show any serious harm that resulted in Ms. Albert sending attorney Devin Lucas a $75.00 check instead of a $47.00 check.

Like the Koshak civil discovery sanctions, the amount owed to Devin Lucas aka Fin City Foods was discharged on February 26, 2019.

Yet, the California State Bar refused to reinstate her license.

This is the sum and total of the conduct Ms. Albert has been punished for. As a whole, the *Selling* factors show that the disciplinary proceeding lacked insufficient evidence, or the third Selling factor of a grave injustice would result if this Court suspended Ms. Albert's license. *Selling v. Radford*, 243 U.S. 46, 50, 37 S. Ct. 377, 378, 61 L. Ed. 585, 587 (1917).

### F.   The Selling Factors

#### 1.   Due Process

The first prong, deprivation of due process includes amending the charges at or after the disciplinary proceeding. See, *In re Ruffalo*, 390 U.S. 544, 551-552, 88 S. Ct. 1222, 1226, 20 L. Ed. 2d 117, 122-123 (1968)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

*In re Ruffalo* 390 U.S. 544, 550-551, 20 L. Ed. 2d 117, 121-123, 88 S. Ct. 1222, (1968), the United States Supreme Court held where "administrative proceedings contemplate the deprivation of a license to practice one's profession they are adversary proceedings of a quasi-criminal nature and procedural due process must be afforded the licensee." *Id.*

As shown above, the findings of the State Bar court in relation to the charges emanating from Woods were all amended during or after the disciplinary hearing depriving Ms. Albert of due process.

Recording the abstract of judgment to breathe life into the discovery sanction orders in the first disciplinary proceeding after the NDC was filed also deprived Ms. Albert of due process in the first hearing.

### 2. Insufficient Evidence

The second prong, lack of sufficient proof of misconduct includes disbarment for contempt of court orders in another court. Sufficient proof of misconduct is shown by "the proof of facts establishing the 'want of fair private and professional character' were so infirm that the court should not accept the state court's decision." *Selling v. Radford*, 243 U.S. 46, 51, 37 S. Ct. 377, 61 L. Ed. 585 (1916).

The charges relating to Woods lacked sufficient proof of misconduct establishing "want of fair private and professional character" because evidence showed Ms. Albert passed off 4,000 pages of documents to her attorney to turn over to the State Bar and that a patent litigation was filed for Woods by a competent and proven patent lawyer like Woods wanted in a manner Woods wanted to claim infringement which Ms. Albert worked on. There is nothing lacking in Ms. Albert's character in that regard.

In *Tillinghast*, the U.S. Supreme Court admitted Tillinghast as a member of the U.S. Supreme Court although a district court in New York had stricken him as a member from their rolls for an order of contempt. The U.S. Supreme Court found it to be good enough that he was a member of the bar of New York state. More importantly, the U.S. Supreme Court found it should not punish Tillinghast just

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

because another court did. It did not have authority to do so. *Ex Parte Tillinghast*, 29 U.S. 4 Pet. 108 (1830).

Here, the state court issued four discovery sanctions orders against Ms. Albert, three of which she thought in good faith she did not have to pay and the fourth she paid prior to the NDC but overpaid the amount. These are not disciplinary sanctions. They all involved a state court so there is no reason for this Court to issue a reciprocal suspension.

The U.S. Supreme court in *Selling* later reaffirmed this principle by explaining "that a mere punishment for contempt by an inferior federal court was not a sufficient ground for preventing admission to the Bar of this court, there being nothing to indicate that the action of the inferior court was based upon the doing of acts which inherently and necessarily deprived the applicant of the fair private and professional character essential to admission." *Selling v. Radford*, 243 U.S. 46, 51, 37 S. Ct. 377, 379, 61 L. Ed. 585, 588 (1917).

Moreover, in Sisson and Woods matter, a finding of failure to cooperate and communicate in a State Bar investigation by the State Bar is not sufficient to find that a federal court should reciprocate in punishing Ms. Albert unless there is a clear showing of "serious harm" that resulted therefrom. "In *Hicks*, the Supreme Court rejected the Bar Association's appeal of the hearing officer's application of standard 7.2, rather than 7.1, because neither the hearing officer nor the Board had made a finding that Hicks's lack of cooperation caused "serious" harm. *Id*.; *see also In re Preszler*, 169 Wn.2d 1, 232 P.3d 1118, 1128 (Wash. 2010) ("Without a clear statement from the hearing officer, however, we are reluctant to find that the actual or potential injury was serious.")." *In re Scannell*, 2011 U.S. App. LEXIS 26705, *1 (9th Cir. 2011).

Neither State Bar order found Ms. Albert caused serious harm in purportedly failing to cooperate or communicate in the State Bar investigations. The State Bar filed four charges in one NDC with three different NDC numbers on it on or about December 15, 2015. The State Bar Court found that the State Bar prosecutor failed to prove the third charge.  The Review Department affirmed that

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

the State Bar prosecutor failed to prove the third charge and affirmed dismissal of the fourth charge, too.

Thus, the case dwindled down to the first charge of failing to cooperate by not providing a substantive timely response on or about November 11, 2015 and failing to pay the discovery sanctions issued by Commissioner Berenson in the UD matter on or about August 31, 2012. The lesser harm of one instance over five years ago of failing to pay civil discovery sanctions in one case and failing to provide an arguably "substantive" response to the State Bar investigator as to one letter in November 2015 was not considered.

In other words, the State Bar court issued the 30-day sanction based on finding multiple instances of misconduct in the court, but it came down to one case in one instance. Thus, there is not sufficient evidence in this record that the original terms of the 30-day suspension were warranted. (Under *Selling v. Radford*, 243 U.S. 46, 51, 61 L. Ed. 585, 37 S. Ct. 377 (1916), the federal court must make "an intrinsic consideration of the state record" to determine whether one of the above conditions is present.).

### 3.  Grave Injustice

The third prong "grave injustice" includes excessive punishment. Excessive punishment was found in the *In re Scannell* matter. Attorney John Scannell, Esq. was disbarred by the Washington Supreme Court for failing to cooperate in two investigations with the intent to frustrate and delay certain disciplinary proceedings, the Ninth Circuit Appellate Commissioner found that the disbarment was excessive because, in basing the "seriousness" of the attorney's obstruction on the "possibility" that his wrongdoing escaped detection, the Supreme Court in effect made a charge for which there was insufficient proof the very basis for the ultimate disciplinary sanction." *In re Scannell*, 2011 U.S. App. LEXIS 26705, *1 (9th Cir. 2011). Thus, Mr. Scannell was able to meet both prong two and prong three under *Selling v. Radford*, 243 U.S. 46, 50, 37 S. Ct. 377, 378, 61 L. Ed. 585, 587 (1917).

Scannell is analogous to the Woods and Sisson charges. There is insufficient proof that the failure to communicate caused serious harm. The same is true of the Lucas aka Fin City charges since

42

1 | Ms. Albert overpaid Lucas and Lucas chose to shoot the $99.00 check back to Ms. Albert uncashed
rather than cash it and send a refund to Ms. Albert. It was an overpayment of nearly $50.00 to Lucas.
There is no serious harm in this conduct.

The Court stated that finding of the attorney creating increased costs or delay in the State Bar
prosecution process is insufficient to prove there was "serious harm." So, the Ninth Circuit refused to
disbar *Scannell* and chose to suspend *Scannell* for 2 years instead, making one year suspension
retroactive while he was objecting to the reciprocal punishment. The Ninth Circuit reinstated *Scannell*
the following year after complying with the Ninth Circuit Court's order. *In re Scannell,* 2012 U.S.
App. LEXIS 27165, *1 (9th Cir. 2012).

In *Mackay v. Nesbett*, 412 F.2d 846 (9th Cir. 1969), the U.S. District Court concluded that
"[the] evidence is insufficient to show overreaching or misconduct by the respondent warranting
suspension from the practice of law before this court." *Mackay v. Nesbett*, 412 F.2d 846, 847 (9th Cir.
1969).

In this case, a grave injustice would arise if this Court were to impose reciprocal punishment
because it offends the U.S. Constitution.

The intrinsic record shows that the California Supreme Court ordered Ms. Albert suspended
for thirty days in 2018. The California State Bar marked those thirty days on its own website as from
February 14, 2018 to March 16, 2018 (a 30-day time period Ms. Albert contests but is irrelevant for
this analysis). [Ex 30 2:101].

The current hold on Ms. Albert's license to be put back in good standing is the $37,555.00 fee
bill owed to the California State Bar. [Ex 60 2:278]. That fee was generated to pay in part for the
disciplinary which as the outset of this paper was shown to be unconstitutional.

Finally, §6086.10 makes State Bar disciplinary proceedings Tumey courts. During prohibition,
a gentleman named Tumey was caught walking across the street in a drunken state. The constable
hauled him in front of the mayor who was also the judge. The mayor fined Tumey $100.00 and
warned that the second fine would be $1,000.00. Tumey appealed and the U.S. Supreme Court
reversed finding that the Ohio Statute which authorized the mayor to collect the $100.00 fine from

43

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

Tumey also paid the town mayor and constable in part. As such, the town mayor and constable had the appearance of having a financial incentive in the outcome of *Tumey's* case.

The Supreme Court held "it certainly violates the Fourteenth Amendment, and deprives a defendant in a [disciplinary] case of due process of law, to subject his liberty or property to the judgment of a court the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case." *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S. Ct. 437, 441, 71 L. Ed. 749, 754 (1927).

The "cost recoupment provision" of Bus & Prof Code § 6086.10 is used to pay for the investigation and hearing costs and like *Tumey*, results in an erroneous deprivation of an attorney's right to practice in her profession. *Zuckerman v. State Bd. of Chiropractic Examiners*, 29 Cal. 4th 32, 43 (2002). (citations omitted).

An attorney "whose license is revoked is deprived of that property interest. Even when the Board imposes a less serious form of discipline such as a short suspension accompanied by a period of probation (as occurred here), disciplinary proceedings may tarnish the [licensed professional's] "good name, reputation, honor, or integrity", making it difficult or impossible for the [professional] to find work, thereby affecting a due process liberty interest." *Zuckerman v. State Bd. of Chiropractic Examiners*, 29 Cal. 4th 32, 43 (2002). (citations omitted).

An attorney accused of several acts of misconduct, *some* of which are untrue, like Ms. Albert might decide not to contest the charges for fear of being charged for the costs of investigation and prosecution even if even *one* of the charges is found true. *Zuckerman v. State Bd. of Chiropractic Examiners*, 29 Cal. 4th 32, 44 (2002). (citations omitted).

In *California Teachers Association v State of California*, the California Supreme Court noted the critical importance of granting disciplinary bodies the discretion not to impose costs. Yet the costs in §6086.10 are mandatory. *California Teachers Assn. v. State of California* 20 Cal.4th 327, 360 (1999).

Since the §6086.10 costs are mandatory, an attorney's due process rights are violated creating another gave injustice if this Court decided to impose reciprocal suspension for failure to pay the State Bar disciplinary costs of $37,555.00.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

1     For all the forementioned reasons a grave injustice would result if this Court imposed a

2  reciprocal suspension.

3                                         **CONCLUSION**

4     Wherefore Lenore Albert respectfully requests that this Court order the Clerk's office to

5  change her status back to active membership in this federal court.

6     Dated: April 2, 2021                    Respectfully Submitted,
                                               s/Lenore Albert
7                                              Lenore Albert

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                45

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

**List of Related Cases:**

Albert-Sheridan v. State Bar, 2021 U.S. LEXIS 126, 208 L. Ed. 2d 542, __ S.Ct. __, 2021 WL 78294 (Jan 11, 2021).

State Bar v. Albert-Sheridan, 2021 U.S. LEXIS 76, 208 L. Ed. 2d 563, __ S.Ct. __, 2021 WL 78485 (Jan. 11, 2021).

Albert v. State Bar, 2020 U.S. LEXIS 4, 140 S. Ct. 820, 205 L. Ed. 2d 498, 2020 WL 129917 (Jan 13, 2020).

Albert-Sheridan v. State Bar of Cal. (In re Albert-Sheridan), 960 F.3d 1188, 2020 U.S. App. LEXIS 18348, Bankr. L. Rep. (CCH) P83,534, 68 Bankr. Ct. Dec. 217, 2020 WL 3086631 (June 10, 2020)

Albert-Sheridan v State Bar of Cal. 20-ap-1095-SC (U.S. Bankr. Ct. CD Cal.).

Albert-Sheridan v State Bar of Cal. 18-ap-1065-SC (U.S. Bankr. Ct. CD Cal.).

State Bar of Cal. v Albert SBC 20-00045

State Bar of Cal. v Albert SBC 20-00044

Dated: April 2, 2021                    Respectfully Submitted,
                                        s/Lenore Albert
                                        Lenore Albert

46

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE:
I declare that I am over the age of 18 years, and not a party to the within action; that I am employed in Orange County, California; my business address is 31872 Joshua Dr #22C, Trabuco Canyon, CA 92679.

On April 2, 2021 I served a copy of the following document(s) described as:
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
On the interested parties in this action as follows:

Joseph R. Manning Jr, Esq.
MANNING LAW APC
20062 SW Birch Street, Ste 200
Newport Beach, CA 92660
Office: 949-200-8755
Email: DisabilityRights@manninglawoffice.com

[x] BY CM/ECF – I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth pursuant to FRCP 5(d)(1).
[] **BY EMAIL –** I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth herein.
**[ ] BY OVERNIGHT MAIL –** I caused such document to be transmitted to the office of the above-referenced party(ies) via overnight mail by sealing such document in an envelope and placing it in the depository for pick up by a FedEx.

Dated: April 2, 2021


                                        s/ Lenore Albert
                                Lenore Albert

47

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LENORE ALBERT'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED 3/05/2021**
Avalos v Gonzalez, et al 1:20-cv-01578-NONE-BAM